STATE *ex rel.* DAVIS *v.* KIVETT *et al.*

(*Knoxville*, September Term, 1943.)

Opinion filed February 5, 1944.

JOHN P. DAVIS and BOYD MASON, both of Tazewell, for complainant.

J. R. KETRON, of Tazewell, R. R. KRAMER, of Knoxville, and J. KYLE KIVETT, of Tazewell, for defendants.

MR. JUSTICE GAILOR delivered the opinion of the Court.

This appeal involves the election of County Judge of Claiborne County in the General Election of August, 1942. John P. Davis, himself an unsuccessful candidate for the office in that election, filed a bill in the Chancery Court against J. Kyle Kivett, the successful candidate for that office, according to the election returns, and against Glenn Pearman, I. N. Mink, and R. B. Parrott, Claiborne County Election Commissioners. The parties will be referred to herein as complainant and defendants, according to their appearance in the Chancery Court.

Although complainant was a candidate for County Judge, he filed his bill, not seeking to have himself installed as such, but for the general welfare, to have the election annulled and declared void on account of the many illegal votes cast therein. The relief he seeks is merely that a regular and legal election may be held to fill the office. We find no identical counterpart of this proceeding in our reported cases. There are many cases in which suit is filed in the alternative, in which it is

sought either to have the complainant alleging himself to be the successful candidate, installed, or in the alternative to have the election declared void because of the illegal votes cast and counted therein. In this case the complainant proceeds upon the rule of law suggested in *Maloney* v. *Collier*, 112 Tenn., 78, 102, 83 S. W., 667, 673:

"These authorities also establish the proposition that such redress (i. e. declaring the election void) may be the sole purpose of an action, and that there need not be an assertion on the part of the party making such question that he received a sufficient number of votes at the election to entitle him to the office."

Under the authority of *Barham* v. *Denison*, 159 Tenn., 226, 230, 17 S. W. (2d), 692, complainant seeks to have the entire election declared void because his specific charges of fraud and irregularity in the election affect a sufficient number of voting precincts to have changed the result of the election if all the voters in those precincts had voted one way. He does not insist that he would have been elected had the illegal votes been eliminated and the votes purged, but that his specifications of fraud and illegality in the election are sufficient to render the result of the election "incurably uncertain," and necessitate our declaration that the entire election is void.

The appeal comes to this Court under section 2129 of the Code, and is to be governed, "in all respects, as appeals from the chancery court." The issues presented do not necessitate the fixing of guilt on any individual or official. We are investigating the election itself to determine whether (1) the findings of the Chancellor are supported by the weight of the evidence and (2) whether on those findings of fraud and irregularity, the Chancellor

was justified in holding the election for County Judge void as not being a real and legal expression of the will of the electors.

The bill charges complainant was running on the Anti-Tax Payers Ticket and that defendant Kivett was a candidate on the Tax Payers Ticket, which was a fusion ticket of Democrats and Republicans; that the candidates running on the Tax Payers Ticket openly stated that they intended to steal the election; that the County Election Commissioners, who are made defendants, were open and enthusiastic partisans and supporters of the Tax Payers Ticket and its candidates, gave the other ticket no representation at the polls and without exception, appointed officers, judges, and clerks who were close relatives of candidates on the Tax Payers Ticket, or bootleggers, law violators and county employees dominated and controlled by the supporters of the Tax Payers Ticket. The Sheriff, who was a candidate on the Tax Payers Ticket, appointed many special deputies to serve on election day, not to keep the peace, but to bear arms and otherwise intimidate the voters and control the election. The bill further charges that complainant and the other candidates on his ticket were not permitted to have any watchers at the polls, and that when they undertook to send watchers to the polls, that such watchers were forcibly dejected and prevented from serving as such; that defendant Election Commissioners actively participated in stealing the election. That one of the Election Commissioners, I. N. Mink, bought votes all day at the New Tazewell precinct; that R. B. Parrott, another Election Commissioner, who was not even a resident of Claiborne County, and had not been for more than a year prior to the election, voted in the election and worked on

election day at the Fork Ridge precinct buying votes, procuring people from Kentucky to vote in the election and actively committed other violations of the election laws; that Glenn Pearman, one of the Election Commissioners, acted as one of the judges in the Arthur precinct, permitted and assisted more than 100 people to vote illegally, marking their ballots when they were not physically disabled, and buying votes; that further, the Election Commissioners, contrary to law, failed to file a copy of the election returns with the County Court Clerk within ten days after the election, and failed to forward a copy to the Secretary of State; that prior to the election, they voted on absentee ballots, many soldiers who were entering the armed service without complying with the provisions of the statute in that regard.

That more than 60 days before the election the candidates of the Tax Payers Ticket and their supporters, made up a slush fund, to which the defendant Kivett contributed large sums of money, and that said fund of more than $6,000 was used illegally for the purchase of poll tax receipts and for influencing voters; that defendant Kivett employed a Mrs. Branson to procure the names of all residents in the 8th Civil District, and gave her $448 with which to buy poll tax receipts for those citizens, which she did, and said citizens voted illegally on such poll tax receipts.

The defendant Kivett filed a demurrer and an answer. He demurred to the bill insofar as it sought to enjoin him from being inducted into office pending the election contest, and in his answer he denied all allegations of fraud or irregularity so far as he was individually concerned. He denied that he had rendered himself ineligible to hold office and exhibited his certificate of election and commission from the Governor.

On motion the Chancellor dissolved the injunction against defendant Kivett and there has been no appeal from that order.

The Election Commissioners who were also named as defendants, filed an unsworn formal answer, denying any wrongdoing on their part. The case was submitted to the Chancellor on depositions, of which there are several thousand pages.

After taking the case under advisement the Chancellor, in a detailed opinion of some 13 type-written pages, in which his findings of fact on the many charges of illegality are carefully and clearly set out, held that the election for County Judge in the election of August 6, 1942, was void for these illegalities. To the decree entered on said opinion, the defendant prayed, was granted and has perfected his appeal; and has made three assignments of error, the first of which is in substance as follows:

(1) 1. That the Chancellor erred in refusing to strike from the record a paper containing 20 pages of type-written names of voters whose poll taxes had been paid in bulk because it was not filed as an exhibit to the original bill, until August 28, 1942, which was more than 20 days after the election of August 6, 1942.

(2) As to the first assignment of error, it is not disputed that the exhibit was filed more than 20 days after the election, and so the first assignment must be sustained. The statutory limitation of 20 days applies to amendments as well as to the original bill:

"We also think that this construction of the statute (Code sec. 2123) applies to all amended or other pleadings, making new charges upon which to contest the election, with the same force it does to the original bill. The statute requires all the grounds of contest to be filed with-

604

in the time limited. Such is its plain meaning and intent." *Harmon* v. *Tyler*, 112 Tenn., 8, 24, 83 S. W., 1041, 1044.

We pause here to say, however, that in view of the undisputed testimony of C. A. Richardson, County Trustee at the time of the election, that of the 6,800 poll taxes paid in the County, 4,000 or 5,000 had been paid in bulk and not paid by individuals; that the elimination of the foregoing exhibit does little to convince this Court of the validity of the election.

We think that the second and third assignments of error may be conveniently considered together. They are:

2. The Court erred in holding and so decreeing that the safeguard surrounding elections provided by law were disregarded in such manner as to render the election incurably uncertain and in declaring the election void. The Court erred in declaring the election void for the reason that the illegal votes cast could have been ascertained and purged from the polls.

3. The Court erred in finding that the defendant contributed money to a campaign fund to be used in the purchase of poll tax receipts, or in the election, for the reason that such charge is not sustained by the proof.

In holding the election for County Judge void, the Chancellor found that a large slush fund was created by the candidates and the supporters of the Tax Payers Ticket, and the fund was placed in bank under what is referred to as "The Davis and Riley Account." The defendant Kivett withdrew from his personal account the sum of $1,000 on April 1, 1942, and on April 2, a deposit of $1,000 was made in the Davis and Riley Account. Again on August 2, he withdrew from his personal account the sum of $1,000 and on August 3, the Davis and Riley Account received a deposit of $1,000.

During the months of April, May and June, more than 60 days prior to the election, the Davis and Riley Account shows many withdrawals of amounts which were divisible by the exact amount necessary to pay poll taxes during the months of the respective withdrawals. For example— poll taxes cost $1.01 in April; there were three checks drawn on the account in sums which were exact multiples of $1.01 during the month of April. In May poll taxes cost $1.02; there were 19 checks during the month of May which were in amounts of exact multiples of $1.02. There were several in the mouth of June in multiples of $1.03 and in that month poll taxes cost $1.03. The account was wholly inactive from June until a few days before the election on August 6, when there were large withdrawals. On August 5, one check for $1,000 and one for $2,000, and on August 7 a check for $3,000 cleared the bank. When the check for $3,000 was actually cashed, it is not shown, but it must have been prior to August 6, for August 6 was a holiday. From this the Chancellor found that the Davis and Riley Account was a political account, used for the purpose of buying poll tax receipts and for other purposes in connection with the election of the candidates of the Tax Payers Tickets. The Chancellor further found that defendant Kivett was a party to, and participated in the purchase of 444 poll tax receipts for votes in the 8th Civil District. The Chancellor further found that Elmer Wilson, a Deputy Sheriff and ardent supporter of the Tax Payers Ticket, who was the operator of a roadhouse, purchased 600 or 700 poll tax receipts, some of which were used by voters in the 8th Civil District where defendant Kivett received 529 votes and the complainant received 9.

Quotng from the Chancellor's opinion at this point;

"It is true that Mr. Kivett states that he contributed no money to the so-called 'Political fund.' When asked, in his first deposition if he remembered a check dated April 1, 1942 in the amount of $1,000.00, made payable to cash, he said he did not remember the check, but could have drawn it.

"When cross-examined before the court, he said that the statement made in his deposition was an error, that he gave the proceeds of the check to Elmer Houk, Attorney for the U. M. W. He further stated that the same is true as to the proceeds of a check he issued, made payable to cash in the sum of $1,000.00 on August 2. In this connection it is proper to state that many other checks for considerable amounts were issued, made payable to cash, by Mr. Kivett during the campaign.

"Mr. Houk was not introduced as a witness, neither was Mr. Kivett's brother, nor Mr. Montgomery, to whom he says he gave $500 each. These sums were drawn on checks made payable to cash.

"It does not appear just why these witnesses were not introduced."

Since it is the election we are investigating, the fact that defendant Kivett gave his money to an attorney for the U. M. W., and his brother on the eve of the election, does nothing to rebut the charge that the money was used to influence the outcome of the election, and so to make it illegal.

Further, quoting from the Chancellor's finding:

"It appears to the court that the circumstances with reference to the Riley and Davis account could have been explained by the testimony of Mr. Davis and Mr. Riley, but neither of these men were introduced."

"A noted roadhouse man by the name of LeFew was appointed to hold the election at Springdale. He had purchased several hundred poll tax receipts in 'block', was armed on the day of the election, and, at the point of a pistol, he and the judges of the election took the ballot box some distance from the election grounds to his roadhouse, went in to same at the back door, the front door being locked, according to the testimony of some of the witnesses, put everybody out of the room, including those who had followed to watch the ballot box during the noon hour. I find from a preponderance of the proof that the ballot box used in the forenoon was not brought back and used in the afternoon, but that another box was substituted, that 175 votes were cast in the forenoon and that most of the last 175 votes were cast for the Tax Payers Ticket. In the light of all the circumstances surrounding the election at this place, I am of the opinion that the entire vote should be cast out."

The Chancellor finally found there were so "many violations of law and many of the safeguards surrounding the election were disregarded, especially at Springdale and Fork Ridge, so much so as to render the election incurably uncertain, thus rendering it impossible to purge the returns. It results that a decree will be entered declaring the election void and taxing the defendant with the costs."

A dog, "Boss Maples"—"Boss" being the dog's name and "Maples" being the name of his owner—was voted in one precinct. It is important only to show the spirit of levity in which this serious function of government, a General Election of State and County Officers, was discharged by those who had control of it. It also swells the total irregularities and tends to prove that the elec-

tion was not a fair expression of the will of the people of Claiborne County.

■ ■ No one of the three Election Commissioners gave his deposition nor denied the serious charges under oath. Since the Commissioners were made parties defendant and failed to deny or even to testify about the election which it was their official duty to conduct and supervise in a legal manner, we are forced to follow the rule of *Fisher* v. *Insurance Company*, 124 Tenn., 450, 483, 138 S. W., 316, Ann. Cas., 1912D, 1246, and presume that since the matter of the charges was peculiarly within the knowledge of those against whom the charges were made, the failure of the Commissioners to testify and explain, is unaccountable under any other reasonable hypothesis than that the charges were true. It is to be further remembered that the defendant Kivett makes no explicit denial of very many of these charges of irregularity and illegality in the election, but insists merely that he personally was guilty of no wrongdoing and that the Chancellor pursued the wrong course; that he could have purged the polls of illegal votes, and that his action in voiding the election was erroneous. With this contention of the defendant, we do not agree. We find that the evidence preponderates in favor of the Chancellor's finding that the election for County Judge was so permeated with fraud and illegality as to compel the conclusion that it was not in fact, an expression of the will of the electors, and that, therefore, the Chancellor was correct in holding that the election for that office was void.

All assignments of error are overruled and the decree of the Chancellor is affirmed.