SHOAF *v.* BRINGLE *et al.*

(*Jackson,* April Term, 1951.)

Opinion filed June 16, 1951.

Rehearing denied July 27, 1951.

WILLIAM A. SHOAF, of Covington, and B. C. DURHAM, JR., of Ripley, for complainant.

CLARKE, NORRIS & MATHERNE, of Brownsville, for defendants.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This proceeding is brought by a contestant, Stanley Shoaf, under Sections 2123-2129, inclusive, of the Code, against V. W. Bringle and the election commissioners of Tipton County, to contest his election to the office of County Judge of Tipton County, Tennessee.

The bill is drafted so that it states a double barrel proposition. It is brought under two aspects of an action of the kind, one, to have the complainant, defendant in error, declared the party elected and, two, that the election held was so permeated with fraud that the entire election is void. Suits of the kind, stating both aspects of the contest, may be brought under the authority of *Maloney* v. *Collier,* 112 Tenn. 78, 83 S. W. 667.

Bringle and Shoaf were opposing candidates for the office of County Judge of Tipton County, Tennessee, in the general election held in that County on August 3, 1950. In the primary which preceded the general election, Shoaf defeated Bringle for the nomination for this office by 1066 votes. In the general election Bringle qualified as an independent candidate and defeated Shoaf, according to the returns of the election commissioners, by 88 votes. As a result of this election the present contest was filed on August 23, 1950, by Shoaf, the unsuccessful candidate,

in the general election, against the successful candidate in the general election.

On September 7, 1950, the defendants filed a demurrer to the bill. The defendant Bringle's demurrer consisting of some 15 or 16 grounds and the election commissioners' demurrer consisting of 3 grounds. The demurrer of the election commissioners raises really only one question, namely, that they are not proper parties to the cause.

The Chancellor, after hearing argument on the matter, overruled the demurrer but allowed the defendants a discretionary appeal therefrom under Sections 9038 and 2129 of the Code of Tennessee. We thus have for consideration the original bill and the demurrers of the parties filed thereto for consideration and disposition.

In addition to the three assignments of the election commissioners, Bringle has filed eighteen assignments. Time and space would not permit taking up each of these grounds and discussing them separately but we will try to cover them as a whole in the general discussion of the case. Of course by the demurrers of the appellants, defendants below, they admit the facts alleged in the bill of complaint. These facts and allegations under this demurrer are taken as true for the purpose of this hearing. The various assignments of error of the parties are merely a restatement of the various grounds of the respective demurrers.

Some of the grounds of the demurrer as to the contestee might be stated thus, that assuming the election to be valid, the petitioner shows no right in himself to the office, because, allowing to him all the votes of which he claims he was deprived, and taking from the contestee all the votes which was alleged he wrongfully received, there is still left to the contestee a majority of the votes.

We will consider this feature of the contest and demurrer applicable thereto first. We think that the grounds of the demurrer touching this feature of the case should be and are hereby sustained.

When we consider this case from the aspect that it was a valid election and that the petitioner, contestant, had received more votes than the contestee it becomes necessary for the contestant to show on the face of his petition or complaint that the illegal votes cast should be thrown out and that when this is done that the vote that he received plus the legal votes of which he claims to have been deprived was greater than that of the contestee. In making these allegations it was necessary that the contestant specifically point out each and every vote that was fraudulently or illegally cast on behalf of the contestee and against him and that the total of these votes when taken from the contestee and added to him would give him a majority. Under the factual situation as set forth in this bill the contestant fails to show specifically that the number of votes cast illegally here if thrown out would give him a majority. Therefore, when we come to purging the polls the contestant fails to sustain his position that there was a valid election and that he received a majority of the votes. It thus appears and there is nothing else that can be done but to hold that the demurrer on this feature of the case should have been sustained by the Chancellor and the suit dismissed as to this branch of the lawsuit. *Nelson* v. *Sneed,* 112 Tenn. 36, 83 S. W. 786; *Maloney* v. *Collier,* supra.

The second theory of the bill is that the election was so permeated with fraud that it did not afford an opportunity for the free and equal expression of the will of the people as to who they desired elected to this office.

The allegations of the petition as to irregularity, illegal and fraudulent acts on behalf of those holding the election are such as if true, and insofar as this proceeding is now concerned, being here on demurrer, it is true this would make the election void.

The demurrer of the election commissioners and the assignments based thereon are to the effect that the duties of the election commissioners are ministerial and that there is no affirmative relief sought against these commissioners and that the bill shows on its face that these commissioners did not abuse their discretion and carried out their duties according to statute. The cases of *State ex rel. Caldwell* v. *McQueen,* 178 Tenn. 478, 159 S. W. (2d) 436 and *State ex rel., Robinson* v. *Hutcheson,* 180 Tenn. 46, 171 S. W. (2d) 282, 168 A. L. R. 850, are cited as authority in support of the demurrers of these commissioners. The bill herein goes much further than did the allegations in either of these cases. The relief sought against these commissioners goes much further and shows the acts of these commissioners illegal, fraudulent and void and they within themselves are the ones who are charged with committing the fraud which if true voids this election. There is no specific act of fraud or corruption charged against the contestee Bringle but he is charged as being the recipient of the fraud and corruption practiced by the election commissioners. It is charged in the bill, and if true, that the parties conspired together to defeat the contestant by doing various and sundry acts hereinafter specifically pointed out. If upon remand and a hearing these things are proven to the satisfaction of the Chancellor it would be his duty to declare the election void and certify the matter to the Governor who in turn would order a re-election under the Statute set forth in the first paragraph of this opinion.

Briefly the bill states the following as the grounds supporting the allegations that the election was fraudulent, invalid and void; that the election commissioners or at least the majority of them, were in conspiracy with the independent candidate, Bringle, to fail to furnish sufficient ballots at the voting places in the county where he was strong so that his supporters would not have an opportunity to vote for him. It is further alleged that ''this refusal to supply sufficient ballots was in furtherance of the conspiracy and purpose to disfranchise legal voters at said precincts who would have, (if they had been permitted to vote,) voted for the complainant''; that as a result of this unlawful conspiracy a sufficient number of ballots were not sent to the various voting precincts and that ''at Holly Grove at least 30 voters were prevented from voting, (by reason of ballot shortage) who would have voted for complainant if they had been permitted to vote. At Quito at least 25 voters were prevented from voting (by reason of ballot shortage) who would have voted for complainant if they had been permitted to vote.''

''At Drummonds at least 200 voters were prevented from voting by reason of ballot shortage who would have voted for complainant if they had been permitted to vote.''

''At Brighton at least 25 were prevented from voting, (by reason of ballot shortage) who would have voted for complainant if they had been permitted to vote.''

''At Wrights Store at least 15 were prevented from voting, (by reason of ballot shortage) who would have voted for complainant if they had been permitted to vote. At Gainsville at least 25 were prevented from voting, (by reason of ballot shortage), who would have voted for complainant if they had been permitted to

vote. At Randolph at least 25 were prevented from voting (by reason of ballot shortage) who would have voted for complainant if they had been permitted to vote.''

It is thus specifically alleged that by reason of the conspiracy of the election commissioners, and the appellant who was supported by them, connived and conspired together to keep the number of people above set forth or something over 300 votes from voting for the contestant; that these commissioners knew that in the general election many more would vote than voted in the primary because Negroes did not vote in the primary while they did vote in the general election and that for this reason more ballots should have been furnished; that those holding the election in this county marked the ballots for numerous Negroes and other disqualified voters and voters from without the county for the contestee when there was nothing wrong with the person for whom they marked the ballot and who should have under the law marked his own ballot. Intimidation and duress is alleged by some of the election officials as to the watchers of the contestant to such an extent that if true these things would amount to a fraud and an illegal election at these places. All of these things and others in reference to an illegal election are pointed out in the bill and if true as they are insofar as our consideration of the matter now is concerned, would void the election when it is shown by the allegations of the bill that the votes thus prevented from being made or illegally cast would have given the contestant a majority of the votes.

Election commissioners should be fair and impartial in carrying out their statutory duties so that all the people can have a right to freely express their will at the ballot box.

When and if these officials conspire to defeat a candidate by failing to supply sufficient ballots for the people to vote a fraudulent act of the kind will void an election if enough votes are affected to change the result of the election. For committing such an act these officials should also be criminally prosecuted.

It is perfectly obvious that an unfair official might thus defeat the will of the people. These officials know generally approximately how many people vote at a given precinct. They know, also, in what precincts a particular candidate is either weak or strong.

The Legislature has in effect established a policy of law as to the number of ballots to be sent to each voting place when they require by Code Section 2053, two (2) ballots for every registered voter. This same proportion should hold true in counties where no registration is required. As heretofore said these officials know the approximate vote that will be there cast.

Such allegations in the bill as "many legal votes" and "many votes" and such general statements are entirely too general under the ground that the election was valid. *Maloney* v. *Collier,* supra. But when we come to consider the ground that the election was void because of the fraudulent and illegal acts of those holding the election such general allegations if supported by any specifically stated facts may be taken into consideration. The allegations of fraud must be supported by some specific allegation of fact.

This Court in *Barry* v. *Lauck,* 45 Tenn. 588, 589, made the following very pertinent observation: "The safety of the State depends upon the preservation of the integrity of the elective franchise and the purity of the elections; and these can only be preserved by requiring

the officers charged with duties in regard thereto, to comply with all the essential requisites of the laws placed to guard the franchise against abuse, fraud or violence.''

In *State ex rel., Davis* v. *Kivett,* 180 Tenn. 598, 177 S. W. (2d) 551, the Court affirmed the finding of the Chancellor that the election was ''so permeated with fraud and illegality as to render election void.'' In this case a lot of proof was taken which convinced the Chancellor that the election was void because of the fraudulent acts committed therein. This Court affirmed because there was material evidence to support this finding of the Chancellor. If upon a hearing upon the merits the proof supports the allegations of the petition therein, above specifically referred to, then clearly the Chancellor would be warranted in holding this election void by reason of the fraudulent and illegal acts committed herein.

The allegations of the bill showing this a fraudulent and illegal election are sufficient and the demurrer as to them must be overruled and the cause must be remanded for further proceedings in the court below. The appellants will be taxed with the costs of this appeal while the costs below will await the outcome there.

### On Petition to Rehear.

The original appellants have filed a dignified, courteous and respectful petition to rehear herein. This petition to all intents and purposes is a reargument of the matters originally argued. It is again contended that the allegations of the bill of the complaint are insufficient to require answer and proof and that the demurrer originally filed should have been sustained by the Chancellor. We very carefully and earnestly considered these matters originally and concluded for reasons stated in our opinion

that the allegations there referred to were sufficient to require answer and proof. We of course could not and did not take up each and every item or word that was challenged in the original briefs, and which are again challenged in the petition to rehear, but we are satisfied that our original opinion answered these things and gave sufficient directions to the Chancellor as to what matters should be considered in evidence.

The Commissioners of Election by their petition to rehear again raise the question that they are not proper parties because no affirmative relief is prayed as to them. The bill of the complaint charges these Commissioners as being guilty of a conspiracy along with the appellant to conduct a fraudulent election and thereby elect the appellant and defeat the appellee. Under such charges of a conspiracy the Election Commissioners are proper parties when they are charged as being parties to this conspiracy. If for no other reason so that the public generally may know, when proof is taken, that they have public officials guilty or not guilty of such fraudulent acts of conspiracy. Then too, if these Commissioners are guilty of such acts they may be assessed with the costs of the cause for their participation therein and thus are proper parties. When such officials are charged as being parties to a fraudulent conspiracy to elect one not holding an office with them they certainly should be made parties defendant to a cause of action.

We have carefully considered the petitions to rehear herein and are satisfied that these petitions should be overruled. It was said long ago in *Louisville & N. Railroad Co.* v. *U. S. Fidelity Co.,* 125 Tenn. 658, 148 S. W. 671, 680, that "a petition for rehearing should never be used merely for the purpose of rearguing the case on

points already considered and determined, unless some new and decisive authority has been discovered, which was overlooked by the court. The office of a petition to rehear is to call the attention of the court to matters overlooked, not to those things which the counsel supposes were improperly decided after full consideration''. We very earnestly gave these matters a full and careful consideration and due to the public import of the matters charged against these Commissioners, concluded as we did in our original opinion. We are satisfied that under the facts charged in the bill herein this determination as shown by our original opinion was correct. It results that the petition to rehear must be denied with costs.

All concur.