W. M. (Ben) Southall, Appellant,

*v.*

Ben Billings and Alfred Peeler, E. H. Wooten, Jr., and Merrill Tatlock, Election Commissioners, Appellees.

375 S.W. 2d 844

(*Jackson*, April Term, 1963.)

Opinion filed December 5, 1963.

JOHN PARKER HILLS, ALEXANDER W. DANN, JR., DANN & HILLS, Memphis, for appellant.

TIPTON & TIPTON, WILLIAM GRUGETT, Covington, for appellees.

MR. JUSTICE WHITE delivered the opinion of the Court.

This proceeding is brought by W. M. (Ben) Southall against Ben Billings, the Sheriff of Tipton County, Tennessee, and Alfred Peeler, E. H. Wooten, Jr., and Merrill Tatlock, the Election Commissioners of that County, for the purpose of enjoining said Election Commissioners from "tampering with, altering or destroying the contents of the general election ballot boxes for all the precincts in Tipton County, those contents being more particularly described as, but not limited to, the ballots, the applications for ballots, the certification of results of the election officials of the precincts, the tally sheets and the poll books", and for the purpose of having the election for Sheriff of Tipton County, Tennessee, which was held on August 2, 1962 "declared to be null and void because of fraud", and, finally, that a special election be held for the election of Sheriff of Tipton County. The original bill was filed on August 16, 1962.

Contestee Ben Billings demurred to the petition on the grounds that it did not set forth the matters relied upon with sufficient definiteness and certainty and that the charges of fraudulent acts were vague and general instead of being definite and specific, all of which will be treated as one ground herein; a second ground of demurrer was that the allegations of the petition, taken as a whole, failed to show enough illegal votes cast in the three challenged precincts to change the result of the election or to render such result uncertain or indefinite.

The election commissioners demurred on grounds which can be treated as one herein, being that they were not proper or necessary parties to the suit.

The trial court sustained each and every ground of both demurrers and dismissed the bill. The injunction against the election commissioners which had been previously granted remains in effect.

The petition herein, which was dismissed on demurrer, alleges that the complainant was a candidate for the office of Sheriff of Tipton County in the General Election held on August 2, 1962. The certified results of such election show that the complainant received 2984 votes, Shankle received 1927 votes, and Billings received 3165 votes, being a plurality of 181 votes. Billings was certified by the election commissioners as the successful candidate to take office on September 1, 1962.

We take judicial notice of the fact that Billings is now in office and has been serving as Sheriff since September 1, 1962.

The purpose of this proceeding is to have the election "declared null and void because of undue influence and incurable uncertainty of the results * * *." It is alleged by the complainant that "many election officials and individuals conspired with candidate Billings or others in his behalf, for the purpose to buy or steal for him enough votes to make his election a certainty."

These charges, that *many* election officials and individuals engaged in a conspiracy with Billings and others in his behalf, are broad and general in character. There is another charge in the bill that approximately $50,-000.00 was spent in behalf of Billings on election day for

the purpose of bribing voters, and that general dishonesty was widespread throughout the county. These, too, are broad, general and sweeping charges.

The contestant alleges further that "the open, notorious, and gross fraud practiced in the precincts" of Randolph, Solo and Gilt Edge "renders the election void in each and that the election for office of Sheriff of Tipton County is, therefore, null and void in toto for undue influence and the incurable uncertainty of the result." Again, these charges are general.

Certain election officials at said voting precincts were charged with acting "throughout the day with blatant disregard to the law and the voting rights of those who came to the polls by marking peoples' ballots under various pretenses", and "that there was no secret balloting in this precinct (Randolph)", and "that Billings literature was being freely passed within the polling place."

It is charged that many applications for ballots were signed by other than the true applicant and that at the polling place (Randolph) one A. B. Lott was openly and notoriously handing out money on behalf of the candidacy of Billings.

At the Randolph precinct Billings recieved 226 votes, Shankle received 5 votes, and the complainant, Southall, received 17 votes.

At the Solo precinct it is charged that the officer of the election, Bobby Anderson, marked approximately 75 of the 202 ballots cast and, in concert with Wilbur Hill, paid voters, not named, $4.00 or $5.00 each. It is further charged that no provision was made for secret balloting at this voting precinct.

The petitioner also says that applications for ballots were fraudulently signed and many ballots were fraudulently cast and counted.

At the Solo precinct Billings received 95 votes, 73 votes were cast for Shankle, and Southall received 28 votes.

It is next charged that the voting at the Gilt Edge box was fraudulently conducted. No provisions were made for voting secretly, "many times five people would be voting at once."

Two election officials "personally 'assisted' with 30% of the ballots cast", meaning that they either marked the ballot or showed the person voting how and where to mark it and that money was being passed at the polling place. "Billings for Sheriff literature was being illegally passed inside the polling place and money was changing hands outside the polling place; contestant alleges that many ballot applications were fraudulently signed by other than the true applicant and that those votes were subsequently fraudulently cast and counted."

At the Gilt Edge precinct Billings received 259 votes, Shankle received 10 votes, and Southall received 114 votes.

In regard to all three of the polling places referred to, it is charged as to each that "when all the votes in this box are cast one way for contestant he then has a plurality of the votes cast for the office of Sheriff and the entire election is, therefore, rendered null and void for uncertainty of result."

Billings' term as Sheriff ends September 1, 1964. The petition herein was filed on August 16, 1962. The de-

murrers were filed on November 17, 1962. The order of the court sustaining the demurrers was entered on January 22, 1963. The appeal bond herein was filed on February 5, 1963, and the entire record was filed in the office of the Clerk of this Court at Jackson on March 7, 1963. An order was entered on application of the contestant on March 13, 1963 to remove this cause from the April Term Calendar.

Excellent arguments were made at the bar of this Court on November 5, 1963. If this case is reversed and returned to the lower court for answer and the taking of proof and a hearing thereon by the court, the term of Billings will have, in all probability, been completed.

Be that as it may, it is our duty to resolve the issues presented to us by this appeal.

It is not our intention to, nor do we, pass upon the merits of this contest. We are concerned only with the sufficiency of the averments in the petition to sustain it as a matter of law and not as a matter of fact. It is well established as part of the procedural law of this State that demurrers are not looked upon with favor and are sustained only when it clearly appears that the averments and charges upon which the complaint rests are fatally defective in substance.

The general object of a demurrer is to save costs and bring the litigation to a speedy close. Section 310, Gibson's Suits in Chancery.

The averments of the bill must be taken as true when the case stands on bill and demurrer. *Mayor of Nashville v. Singer, etc., Fertilizer Co.*, 127 Tenn. 107, 153 S.W. 838 (1912), and many other cases.

■ This Court must take the averments of the bill as true on a review of the chancellor's decree sustaining the demurrer. *Prince v. Lawson*, 167 Tenn. 319, 321, 69 S.W.2d 889 (1934); *Manley v. Belew*, 190 Tenn. 698, 231 S.W.2d 353 (1950); *Large v. Dick*, 207 Tenn. 664, 343 S.W.2d 693 (1960).

It has been repeatedly held that by demurring the defendant confesses the truth of all properly pleaded facts as set forth in the complaint and relevant inferences of fact deductible from such alleged facts. *Zager v. Cobb*, 192 Tenn. 79, 737 S.W.2d 560 (1951); *Williams v. McElhaney*, 203 Tenn. 602, 315 S.W.2d 106 (1958).

■ However, the conclusions of a pleader which have no foundation in fact are not admitted by demurrer. In other words, a demurrer admits only facts that are well pleaded and reasonable inferences of fact but not deductions, inferences or conclusions of law. See *Bricker v. Sims*, 195 Tenn. 361, 259 S.W.2d 661 (1953); *In re Eppinger's Estate*, 207 Tenn. 53, 336 S.W.2d 28 (1960).

■ Generally in Tennessee there are two grounds upon which there may be an election contest. (1) The election is valid and the contestant won the election; and (2) the election was null and void for some valid reason or reasons. This suit is brought for the purpose of having the election declared null and void and if it is finally so determined, then a new election may be held in order to fill the office.

In the case of *State ex rel. Davis v. Kivett*, 180 Tenn. 598, 177 S.W.2d 551 (1944), this Court affirmed the action of the chancellor in holding that the election for county judge in that case was "so permeated with fraud and illegality as to compel the conclusion that it was not in

fact, an expression of the will of the electors, and that, therefore, the Chancellor was correct in holding that the election for that office was void.''

The chancellor in that case also held that there were so ''many violations of law and many of the safeguards surrounding the election were disregarded, especially at Springdale and Fork Ridge (precincts), so much so as to render the election incurably uncertain, thus rendering it impossible to purge the returns. It results that a decree will be entered declaring the election void * * *.''

This Court called attention to the fact that fictitious votes were cast in one precinct:

''A dog, 'Boss Maples'—'Boss' being the dog's name and 'Maples' being the name of his owner—was voted in one precinct. It is important only to show the spirit of levity in which this serious function of government, a General Election of State and County Officers, was discharged by those who had control of it. It also swells the total irregularities and tends to prove that the election was not a fair expression of the will of the people of Claiborne County.'' 180 Tenn. at 607-608, 177 S.W.2d at 554.

In the case of *Ingram v. Burnette,* 204 Tenn. 149, 316 S.W.2d 31 (1958), the election of a mayor and aldermen for a city was declared void upon the ground of fraud and in so doing followed the general test of validity of elections as set forth in *Maloney v. Collier,* 112 Tenn. 78, 83 S.W.2d 667 (1903); *Barham v. Denison,* 159 Tenn. 226, 17 S.W.2d 692 (1929); and *State ex rel. Davis v. Kivett,* supra.

We have heretofore set out certain general and specific charges of fraud. At the Solo precinct it is specifically charged:

That applications for ballots were fraudulently signed and many ballots were fraudulently cast and counted. Contestant alleges that toward the end of the day Norris Nix became angry at a group of interested citizens who expressed disapproval and ran at them with a 4 by 4 timber, cussing and swearing, and ordering them off the property on which the voting was being held, stating that it was private property and that they were trespassers. Contestant alleges that as the result of this, many voters who would have cast ballots for him were intimidated and did not vote in the election.

The specific charges of irregularity at the Randolph precinct are set out above and in addition, it is said that "at least two negroes voted at the Randolph precinct though not registered and were paid for doing so, and at least one white woman had a vote cast for her at this polling place even though she worked all day and never came to the polls to vote"; that the said A. B. Lott was handing out money, as aforesaid, "the procedure for this being that the voters would go into the polling place, register for a ballot, Mr. Glass (L. B. Glass one of the precinct officials) would mark the ballot for Billings and then the person voted would collect his or her money; that as the day progressed, it became dangerous for the watchers to remain on the premises * * * were threatened and forced to retreat from the polling place."

There are no general or specific charges of fraud or lack of duty on the part of the election official named as defendants, but, as indicated above, there are sharp and

pointed charges against some of the precinct officials in their conduct of the election, the accuracy of which depends on the proof.

■ Under the averments contained in this petition and the established procedure of this State, we must reverse the action of the trial judge in dismissing this case on demurrer and remand it for further proceedings not inconsistent with this opinion.

BURNETT, CHIEF JUSTICE, DYER and HOLMES, JUSTICES, and CLEMENT, SPECIAL JUSTICE, concur.

On Petition to Rehear

WHITE, JUSTICE.

A petition to rehear has been filed in this case by counsel for contestee, Ben Billings. We will attempt to clarify one point which was considered and determined in our original opinion and deal at some length with the contestee's third ground, which is based upon our recent decision in the case of *Hilliard v. Park,* 212 Tenn. 588, 370 S.W.2d 829 (1963).

Contestee's first ground of contention is that the contestant's petition does not specifically point out enough illegal votes to change the results of the election and that this is a fatal defect when challenged by a demurrer to that effect.

In support of this contention contestee cites the cases of *Jared v. Fitzgerald,* 183 Tenn. 682, 195 S.W.2d 1 (1946), and *Shoaf v. Bringle,* 192 Tenn. 695, 241 S.W.2d 832 (1951). Contestee contends that our holding in the instant case overrules these cases. We do not agree.

■ A close reading of the cases cited by contestee and those to which this Court makes reference in the original opinion will show that where the relief sought is a declaration that the election is invalid and void it is not necessarily fatal, upon demurrer, that the petition does not specifically point out enough illegal votes to change the result of the election or enough to make the result uncertain. This is merely one way a contestant may show that "the election was so permeated with fraud that it did not afford an opportunity for the free and equal expression of the will of the people as to who they desired elected." In the case of *Shoaf v. Bringle,* supra, cited by the contestee, at page 703 of 192 Tenn., at page 835 of 241 S.W.2d the Court makes this clear:

"Such allegations in the bill as 'many legal votes' and 'many votes' and such general statements are entirely too general under the ground that the election *was valid.* * * * But when we come to consider the ground that the election was void because of the fraudulent and illegal acts of those holding the election such general allegations *if supported by any specifically stated* facts may be taken into consideration. The allegations of fraud must be supported by some specific allegation of fact." (Emphasis supplied).

In the instant case, just as in *State ex rel. Davis v. Kivett,* 180 Tenn. 598, 177 S.W.2d 551 (1944), the contestant alleged that in each of a number of precincts the election officials, etc., committed illegal and fraudulent acts and so conducted the election that the election in such precincts did not afford an opportunity for the free and equal expression of the will of the people, and that if all the votes in any one of a number of such precincts were counted for the contestant it would make the results

of the whole election "incurably uncertain". In the instant case the contestant has made sufficient specific allegations of illegality and fraud to support the general allegations just as did the contestant in *Davis. v. Kivett,* supra. Thus, just as in that case, the contestant has stated a cause of action sufficient to withstand a demurrer.

As stated in our original opinion, we are not passing on the merits of the contest. It may well be that on remand the contestant will fail to prove that the election was so permeated with fraud and illegality as to keep it from being a free and equal expression of the will of the people.

This brings us to contestee's third ground which has caused this Court considerable concern. Counsel for contestee contends that under our decision in the recent case of *Hilliard v. Park,* 212 Tenn. 588, 370 S.W.2d 829 (1963), the questions in this case and the relief sought by the contestant are moot. He points out that the only relief sought by the contestant is that the election be declared void and that a special election be held as required by law. He maintains that under our holding in Hilliard, supra, even if, on remand, the contestant is able to substantiate his allegations and have the election declared void, such declaration would be of no use to him because under that case the contestee, Ben Billings, would be entitled to hold over in office until his successor was elected and qualified at the next biennial election. This is what would happen if the election was not declared void. Either way the contestee would remain in office until the end of his regular term.

*Hilliard v. Park,* supra, involved six election contests turning basically upon the same question in each case.

The offices involved were sheriff, circuit court clerk, registrar of deeds, county court clerk, and two constables. The sheriff was re-elected and the other five were elected for the first time in the election in question. This Court affirmed the circuit court in holding the election void for uncertainty due to a number of ineligible absentee votes.

A petition to rehear was filed in that case, questioning the validity of a statement made in the original opinion at page 832 of 370 S.W.2d:

"Of course, holding thus simply means that the incumbents in these offices at the time this election was held void will hold over until their successors are elected and qualified by law. *Conger v. Roy*, 151 Tenn. 30, 267 S.W. 122."

We held that the sheriff was a *de jure* incumbent because prior to the election he had been sheriff and was holding office at the time of the election and that the remainder of the officers were *de facto* incumbents since they had been in possession of the offices at the time the election was declared void. At page 839 of 370 S.W.2d we said:

"Counsel in this petition to rehear relies upon Section 2-1924, T.C.A., as authority for his contention that there is a vacancy in the office. This Court in the Conger case considered and quoted in full this same statute, which was then Section 1332, Shannon's Code, and said this:

" 'We think this section applies only where there is a vacancy; in other words, where there is no one to hold the office. It does not and cannot apply where there is an incumbent who may hold over until his

successor is elected and qualified, as provided by
the Constitution. The constitutional provision must
control.' ''

We then held that when an election has been held void
and the office is occupied by either a *de jure* officer or a
*de facto* officer the courts have no power to call a special
election; and, therefore, the ''incumbents'' at the time
the election was held void would hold over until their
successors were elected and qualified by law at the next
regular biennial election.

It is to be noted that the decision in *Hilliard v. Park,*
212 Tenn. 588, 370 S.W.2d 829 (1963), was based upon
an interpretation of T.C.A. 2-1924. Certain other sec-
tions of the Code, which were not brought to our atten-
tion, however, govern the matters in question and leave
little room for interpretation:

T.C.A. ''8-2801. Causes of vacancies.—Any office in
this state is vacated:

\*　　\*　　\*　　\*　　\*　　\*

''(4) By the decision of a competent tribunal, declar-
ing the election or appointment void or the office
vacant.''

T.C.A. ''2-1902. Circuit court—Jurisdiction over what
contests.—The circuit court hears and determines all
contests of the election of sheriffs, clerks of the circuit,
criminal, or other court whose clerks are elected by
the people, except clerks of the county court.''

T.C.A. ''8-2806. Certification of judgment of vacancy.
—Whenever there is a final judgment of a competent
tribunal, declaring any election or appointment void,
or any office vacated, such judgment shall promptly be

certified by the clerk to the appointing power or power whose duty it is to take steps to fill the vacancy."

T.C.A. "5-513. Filling of vacancies in office.—Vacancies in said offices and in the following offices are filled by election or appointment of the county court: Sheriffs, trustees, registers, public administrators and guardians, constables, county court clerks, county tax assessors, or any other county officer, not otherwise provided for."

T.C.A. "8-806. Temporary appointment by county court.—In such cases, and in all cases of vacancy in the office of sheriff, the county court may fill the vacancy by temporary appointment, the person so appointed giving bond and qualifying as sheriff, and continuing to act until the office is filled by the people."

T.C.A. "8-807. Temporary appointment by judge or chairman.—When there is a vacancy in the office of sheriff, and no coroner, the judge or chairman of the county court may make an appointment of one to serve until a successor is elected by the county court."

T.C.A. "8-808. Coroner acting as sheriff.—When the office of sheriff is vacant, or the sheriff is incompetent to act, the coroner of the county shall perform all the duties of sheriff, under the same penalties and liabilities imposed by law on sheriffs; and when both offices are vacant, or both officers are incompetent, or where one office is vacant and the person holding the other is incompetent, a constable may execute any process."

These sections clearly do not contemplate that the person declared "elected" in the void election should continue in office for *any* period of time after the circuit court declares his election void, and that decision be-

comes final or is upheld on appeal. This was made clear in *Shumate v. Claiborne County*, 183 Tenn. 182, at page 185, 191 S.W.2d 441, at page 442 (1946), where this Court held:

"If and when, as in the instant case, the election of the person who has succeeded to the office and occupied it pending a contest, is adjudged void, *this occupant's tenure of office expires and a vacancy results.*" (Emphasis supplied).

We must concede that counsel for contestee, Ben Billings, is correct in stating that under our decision in *Hilliard v. Park*, supra, there would be no point in anyone contesting an election. This is amply demonstrated by a consideration of the instant case. If, on remand, the allegations of the contestant, Ben Southall, were proved and the election declared void, the ruling in *Hilliard v. Park* would allow the contestee, Ben Billings, to hold office as sheriff until the next biennial election; thus, the election contest could have no purpose.

For the reasons set out in this opinion, we must overrule our decision in *Hilliard v. Park* to the extent that it is inconsistent with the aforesaid sections of the Code and *Shumate v. Claiborne County*, supra. For the same reasons the petition to rehear in the instant case is denied.

BURNETT, CHIEF JUSTICE, DYER and HOLMES, JUSTICES, and CLEMENT, SPECIAL JUSTICE, concur.