IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 30, 2003 Session

## STEVE FRITTS v. ANDERSON COUNTY ELECTION COMMISSION, et al., and JERRY CREASEY v. ANDERSON COUNTY ELECTIONS COMMISSION, et al.

**Direct Appeal from the Chancery Court for Anderson County
Nos. 02CH2769 and 02CH2522   Hon. William E. Lantrip, Judge**

_____ **FILED AUGUST 11, 2003** _____

**No. E2003-00015-COA-R3-CV
and
No. E2002-03118-COA-R3-CV**

_____

In this election contest of two seats on the County Commission, the Trial Court declared the top vote getter elected to one of the seats and ordered another election between the other candidates for the other seat.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

George H. Buxton and Harold P. Cousins, Jr., Oak Ridge, Tennessee, for Steve Fritts.

David A. Stuart, Clinton, Tennessee, for Jerry Creasey.

Donald B. Roe, Oak Ridge, Tennessee, for Harold Jernigan.

William A. Reeves, Knoxville, Tennessee, for Anderson County Election Commission.

### OPINION

In this action, the election for County Commissioners from the 7th district of Anderson

County, held August 1, 2002 was contested. Three candidates contended for the two seats on the commission. Jerry Creasey and Harold Jernigan had been incumbents, and Steve Fritts was the third candidate on the ballot. The certified returns of election showed Jernigan received the most votes with 805, and Fritts received 748 votes, and Creasey 747 votes.

The record establishes that the Election Commission did not comply with Tenn. Code Ann. § 2-6-601, as it relates to the Oak Ridge Retirement Community Facility. The record shows that this nursing home facility had approximately 165 residents of which there were 59 registered voters, 17 of whom voted in the election.

Jernigan filed a Motion to Dismiss, which the Trial Court granted and stated in the Order:

> 1) Only forty-two (42) votes would be available to change the certified election results as to defendant Jernigan;
>
> 2) Defendant Jernigan's margin of victory was 57 votes and therefore the potentially disputed 42 votes available, regardless of how those votes might have been cast, would not change the results of the election as to defendant Jernigan;
>
> 3) The certified election results as to defendant Jernigan should stand; and therefore defendant's Motion to Dismiss is well taken and should be granted.

The Order went on to state that the certified election of Jernigan to the Seventh District County Commission was affirmed.

The matter came on for hearing on the remaining issues, and in the Court's Final Judgment he declared the election between Creasey and Fritts void, and ordered their names to be placed upon the ballot for the general election to be held on November 5, 2002. In the November 5th election, Creasey prevailed over Fritts, and Fritts then filed a Complaint to Contest Election on November 14, 2002, which the Court dismissed on the grounds of *res judicata* and estoppel. Both actions have been consolidated in this appeal.

Fritts essentially argues that neither case law nor the statute provides for the remedy forged by the Trial Court, rather, the Court's only option was to void the election results as to all three candidates and order a new election with all three candidates on the ballot.

Contested election cases are reviewable on appeal *de novo. Barham v. Denison,* 17 S.W.2d 692 (Tenn. 1929). Absent a showing of fraud or illegality, the courts will refrain from interfering with election returns. *Lee v. Tuttle,* 965 S.W.2d 483, 485 (Tenn. 1998).

Tenn. Code Ann. § 2-17-112 provides for remedies in election contests.

**2-17-112. Judgment. -** (a) After hearing the case the court shall give judgment either:

> (1) Confirming the election;
> (2) Declaring the election void;
> (3) Declaring a tie between persons who have the same number of votes if it appears that two (2) or more persons who have the same number of votes have or would have had if the ballot intended for them and illegally rejected had been received, the highest number of votes for the office; or
> (4) Declaring a person duly elected if it appears that such person received or would have received the highest number of votes had the ballots intended for such person and illegally rejected been received.

> (b) A judgment under subdivision (a)(4) deprives the person whose election is contested of all right or claim to the office and invests the person declared by the judgment duly elected with the right to the office.

The crux of Fritts' argument on appeal as stated in his brief, is:

> . . . The basis for the Trial Court's dismissal of Jernigan and for its Judgment ordering a new election between two of the three candidates was there were potential voters that might have changed the election results of August 1, 2002. However, a review of the Order dismissing Jernigan and the FINAL JUDGMENT, support the conclusion that the election was rendered incurably uncertain. It is impossible to determine whether any of the forty-two (42) voters in question would have voted or how they would have voted. To do so is speculation. When a Trial Court finds irregularities in an election contest which results in it being impossible to determine how the vote tabulation affected the vote for each candidate, then the election is incurably uncertain and in accordance with *Emery v. Robertson County Elect. Com.*, 586 S.W.2d 103 (Tenn. 1979) and *Austin v. Mayfield*, 611 S.W.2d 824 (Tenn. 1981), the Trial Court has only one option and that is to void the entire election as to all of the candidates.

We cannot agree.

Fritts is correct in that it is a matter of speculation as to how the 42 potential voters may have voted. However, that is not the test in election contests. *Emery* states:

> The reported decisions of this state uniformly authorize the courts to void an election where the evidence reveals that the number of illegal ballots cast equals or exceeds the difference between the two candidates receiving the most votes. The rule is based upon the rationale that if all of the illegal votes had been cast for the unsuccessful candidate the result would have been changed. *See, e.g., Ingram v. Burnette, supra;*

-3-

*Hillard v. Park*, *supra*. In *Southall v. Billings*, 213 Tenn. 280, 375 S.W.2d 844 (1963), Mr. Justice White, writing for the Court, suggests that such a mathematical purging of votes renders the election void because of the uncertainty of result. *Id.* 375 S.W.2d at 850.

Applying this test, the 42 potential votes neither equaled nor exceeded the difference between Harold Jernigan and the other two candidates. *Emery* is instructive and was an election contest involving a sheriff's race and two positions on the county commission in the 4th district of Robertson County where there were four candidates. Commission candidate Dorris had received 453 votes, candidate Shedden 342 votes, candidate Bellar 341 votes, and the 4th candidate 23 votes. In this regard the *Emery* Court said:

> The proof shows that thirty-seven absentee ballots were cast in the Fourth District and that at least eleven, if not more, of the absentee ballots rejected were cast by Fourth District voters. Thus, the Chancellor could have voided the certification of Shedden who had only one more vote that Bellar, on that simple mathematical calculation. . . .

The Court went on to say that:

> . . . The irregularities found by the Chancellor were of such a nature that it was impossible to say that they affected the vote for candidates Bellar and Shedden but did not affect the vote for candidate Dorris, or that they did not affect the vote in the Sheriff's race.

The "irregularities" in this case do not rise to the level described in *Emery*. Here, we are concerned with 42 potential voters who may have voted had the Election Commission complied with its statutory duties. Clearly this affected the vote for candidates Fritts and Creasey, but did not affect the vote for Jernigan applying the rationale quoted from *Emery*.

*Mayfield* does not support Fritts' argument. In the election contest in *Mayfield* over the members of the Board of Aldermen of the town of Maury City there were eight candidates for five positions on the Board and the vote totals for the eight in descending order were 216, 163, 159, 156, 150, 147, 129 and 125. The top five vote getters were elected and the sixth runner-up with 147 votes filed the election contest. The Supreme Court, speaking through Justice Fones, said:

> In this Court appellant, Mayfield, insists that at least thirty-five votes were illegally cast, and he has identified the individual voters. If Mayfield's contentions are correct, the election would be void as to every candidate except Riddick. However, the proof was vague, incomplete, and rendered uncertain because of the erroneous ruling of the trial judge on the validity of Austin's amendment and other rulings that followed in the wake thereof. Also, as indicated above, the Chancellor made no finding of fact with respect to the validity or invalidity of the thirty-five identified

citizens whose votes may have been tainted with some irregularity. It is inappropriate for this Court to assume the role of original fact finder, even if the factual record appeared complete.

We, therefore, remand this case back to the trial court for further consideration of the evidence offered and such additional evidence as may be appropriate that relates to all allegations in both the original and amended complaints. If the trial court's finding of fact supports a conclusion that the election was rendered incurably uncertain, the character of irregularities should be specifically identified and the entire election should be voided. *If the findings support the purging of a specific number of ballots cast by identifiable citizens, then the election should be declared void as to all candidates whose total vote did not exceed Austin's one-hundred and forty-seven votes by more than the number of void ballots.* (Emphasis supplied).

Accordingly, *Mayfield* holds in races for multiple positions, that a remedy may be to void the election as to certain candidates, but not all. The case of *Forbes v. Bell,* 816 S.W.2d 716 (Tenn. 1991), recognizes that statutory violations may be sufficient to render an election void, but the Court then recognized that the violation must be so serious as to thwart the will of the community upon a particular question. The statutory violation established in this case does not rise to that level.

We affirm the Trial Court's Order ordering another election as to the unfilled seat between the remaining candidates Creasey and Fritts.

As to the subsequent suit filed by Fritts after the November election, the Trial Court held that the parties and issues in the subsequent action were the same as the issues raised and cited in the first election contest and dismissed the action. Our decision affirming the Trial Court's Judgment in the initial election contest renders moot this subsequent action, because the basis of the subsequent action was that the entire election in August should have been rendered void and all three of the candidates should have been placed on the November ballot.

We affirm the Judgments of the Trial Court and remand with the cost of the appeal assessed to Steve Fritts.

_____
HERSCHEL PICKENS FRANKS, J.