HAMILTON NATIONAL BANK OF KNOXVILLE, Executor of the
Will of SAMUEL V. MINSKEY,

*v.*

THOMAS D. BENSON, Commissioner of the Department of
Revenue, State of Tennessee.

444 S.W.2d 277.

(*Nashville,* December Term, 1968.)

Opinion filed July 11, 1969.

Opinion on Petition to Rehear Denied September 5, 1969.

S. FRANK FOWLER, Knoxville, for appellant; FOWLER, ROWNTREE, FOWLER & ROBERTSON, Knoxville, of counsel.

GEORGE F. McCANLESS, Attorney General, and PAUL E. JENNENGS, Assistant Attorney General, Nashville, for the state.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The question involved in this lawsuit is whether or not an Executor of an estate is required under the statute, sec. 30-1621, T.C.A., to pay on a large block of stock of the intestate the full value of said stock as quoted on the stock exchange on the day of death. In other words, does the Executor have to pay under what

is known as the "unit" rule in the assessment of these shares of stock, that is, pay the value of these eleven odd thousand shares on the basis that the tax must be determined by multiplying these eleven odd thousand shares by the market price per share indicated by the market over-the-counter quotation on the day of death.

The appellant executor filed a bill seeking to apply what is known as the "blockage" rule or principle, which takes into consideration that in some instances a large block of stock cannot be marketed or turned into cash as readily as can a few shares, and thus the value obtained by multiplying this stock by the price of one share of stock ignores the facts regarding the true valuation.

In the instant case the executor paid the commissioner on the basis of the "blockage" rule and this was not accepted by the commissioner, the returns having been filed as required by sec. 30-1601 et seq., T.C.A., and the commissioner placed a value on the stock in accordance with the "unit" rule. This assessed valuation by the commissioner was paid under protest and the present suit brought to recover this difference in the tax assessment. To this bill the appellee, the commissioner, demurred, setting forth his contention in three grounds of the demurrer that under the statute there is a mandate on the commissioner that the listed stocks shall be valued at the per share value of the quoted market regardless of the blockage factor that exists where a block of stock is of such size that the market will take it only at a depressed price; he likewise asserted that there was not a statutory provision authorizing him to divide up the stock, and that the procedure he followed was mandatory, because the Legislature had directed the manner in which the stock was to be valued such as

involved in this litigation and that this direction in the statute was constitutional. The Chancellor sustained the demurrer.

The statute under which this assessment was made and which is claimed by the commissioner to be mandatory is sec. 30-1621, T.C.A., and is as follows:

"*Basis of appraisal.*—All property, real and personal, shall be appraised at its *full and true value* at the date of death of the decedent.

"Stocks and bonds listed on recognized exchanges shall be appraised by ascertaining their quoted value on the date of death of decedent, or on the nearest business day of such exchange to such date." (Emphasis supplied.)

By Article 2, sec. 28, of the Constitution of Tennessee it is directed that: "All property shall be taxed according to its value, that value to be ascertained in such manner as the Legislature shall direct, * * *."

■ Obviously, it is provided that this property shall be appraised at its "full and true value" in one paragraph, and the second paragraph is merely demonstrative of a way to value the property, but it is not mandatory by such section that the property be appraised only in this way. The question posed and one that must be answered under this statute is a question of fact for determination by the commissioner with the suggestion that it may be appraised as provided in the second sentence of this statute.

Normally and as a general rule where shares of stock are listed or bought and sold upon the stock exchange constantly in large quantities for cash at prices which are recorded, the prices so recorded for such shares on the

particular day may be conclusive in determining the value of a block of such shares on that day. McCormick on Damages (Hornbrook Series) 1935, 166 sec. 44.

The so-called "blockage" rule attempted to be invoked in this case is an exception to the general rule and it should be applied if it is necessary to use it in getting to the true value of the property assessed so as to be fair both with the taxpayer and the State.

This so-called "blockage" rule comes about when the evidence establishes, as it is under this bill which was demurred to, that a block of shares to be valued as of a particular day is so large that if sold during a reasonable period before and after that date, it would necessarily and substantially depress the price of such shares, then the price as recorded on that exchange for such shares on that day will be conclusive in determining the value of the block of shares. This question of applying the "blockage" rule is discussed in many of the lawbooks and in many cases. There are a host of notes in the various American Law Reports, the last of which we find in 23 A.L.R.2d 775, particularly on page 776, where in the outset this statement appears:

> " 'Blockage', as pointed out by Randolph Paul in his treatise on 'Federal Estate and Gift Taxation', is the recognition of the principle of what has been called the 'pregnant' fact that a large block of stock cannot be marketed and turned into cash as readily as a few shares * * * It is more fitting to state that it does project the question whether such quotations constitute demonstrable proof of the true taxable value of such large blocks of stock."

After the question had been raised in a number of State as well as Federal cases, the Circuit Court of Appeals of

the Fourth Circuit, which consisted of three of the ablest Judges of their time, adopted the "blockage" rules in an opinion of that court and held that a block of stock may be a factor to be considered in the valuation for inheritance tax purposes. *Helvering v. Safe Deposit & Trust Co.*, 95 F.2d 806, wherein that court said at page 812:

"* * * It [taxing authority] could not ignore the pregnant fact, having found it to exist, that a large block of stock cannot be marketed and turned into money as readily as a few shares. The opposite condition might possibly have prevailed, for the influence of the ownership of a large number of shares upon corporate control might give them a value in excess of prevailing market quotations in which event the application of the administrative rule would be unfair to the government. * * *"

In one of the annotations on the subject, 117 A.L.R. 151, this is said:

"* * * The view which appears to have been adopted in the most recent decisions is that, although there is no rule or presumption that the value of a large block of stock is less per unit than the unit market price of the small lots, neverless the size of the decedent's holdings may be a factor affecting the value of his stock and evidence in that regard may be considered."

There are any number of cases pro and con on this subject, but the language above used by the Fourth Circuit in the *Helvering* case appears to us to be the common sense way to look at it. A number of these cases that are considered have a statute that uses an entirely different phrase from that of ours, such as, fair market value, actual market value, and things of that kind. The lan-

guage of our statute is that it shall be appraised at its "full and true value", and of course, that is the governing part of the statute here. What we have to consider here is the intention of the Legislature. What was the intention of the Legislature? It is that the property should be assessed by the commissioner at its full and true value.

These words, full and true value, according to *State v. Wagner,* 233 Minn. 241, 46 N.W.2d 676, 23 A.L.R.2d 762 (1951), are used interchangeably and are synonymous with the meaning of statutes, such as true and full value and words of that kind. The Minnesota case, just referred to, held that the property there for inheritance tax purposes shall not be valued solely on the market price for such stock on the day of deceased's death in view of the small average daily volume of trading in such stock in comparison with the total number of shares outstanding. In fact in all of these cases the question is a fact question and the commissioner in considering this fact question should take into consideration other things rather than just accept the statement as mandatory and assess the estate on the value as shown by a share sold on the market on that day. That is not what the Legislature meant. It meant to consider the value of the whole block of stock to be assessed on its true value on that day and there are various and sundry things to take into consideration in arriving at that, and this is the only way that a result might be reached which would not prejudice the State nor the taxpayer. This being true, the parties should be allowed to introduce proof in a properly drawn bill for that purpose. When the State takes the arbitrary position that it is bound by the words of the statute and does not allow anything else and de-

murs to the bill, we must take the allegations of the bill as true facts of this situation as well as other properly deductible facts. *Krusenklaus v. Holland,* 219 Tenn. 30, 406 S.W.2d 163; *Brewer v. Norman,* 190 Tenn. 117, 228 S.W.2d 81; *Emmco Ins. Co. v. Beacon Mut. Indemnity,* 204 Tenn. 540, 322 S.W.2d 226; *Zager v. Cobb,* 192 Tenn. 79, 237 S.W.2d 560.

In *Citizens Fidelity Bank & Trust Co. v. Reeves,* Kentucky Court of Appeals, 1953, 259 S.W.2d 432, that court made this very true observation when it said in reversing another Kentucky case, which had applied the "unit" rule:

"Moreover, if both the Commission and the taxpayer are irrevocably bound to accept the stock exchange price of one share of stock as the unit of value for all other shares of similar stock an unnatural condition of the market created by an unusual sequence of events or even by an intention manipulation could result in injustice to the taxpayer in some cases and to the Commission in others.

"We conclude, not only from our examination of the authorities but as a matter of simple justice, that both the taxpayer and the Commission should have the right to introduce extraneous evidence for the purpose of showing that the price for which stock is sold on a stock exchange on a given date does not necessarily represent the unit value of similar stock held by the taxpayer on that date. We do not undertake to say how much weight the Commission should give to such evidence if it is introduced."

The opinion goes on and comments on different things about proof and it is said they do not adopt the "block-

age" rule as the dominant, much less the exclusive, criterion of taxable value, but are of the opinion that in some cases the amount of stock and the difficulty of selling it are factors which should be given consideration in fixing the valuation. We fully agree with this statement as applicable to fixing taxes under the statute here involved.

A number of cases have been cited pro and con by respective counsel here, but we find that the majority of these cases in favor of adopting the "blockage" rule are Federal cases. We realize though that Federal policies in their tax matters have no effect upon our inquiry because although the Federal legislative power is supreme where Congress is given any authority over the State, yet it requires no argument to show that the Federal Government does not extend to the taxing powers of the States in raising revenue for carrying on particular State Government functions. We believe that the conclusions we have arrived at herein are the reasonable and logical conclusions to reach.

We have read all these cases including the case of *Montclair Trust Co. v. Zink,* 141 N.J.Eq. 401, 57 A.2d 372. There is a long dissertation by a Vice Ordinary of that State in which in the end an earlier decision of *Squier v. Martin,* 131 N.J.Eq. 263, 24 A.2d 865, is affirmed which refused to apply the "blockage" rule. This opinion attempts to analyze all opinions in the United States on this subject whether or not they were pertinent. At a later time in 1956, the Supreme Court of New Jersey spoke on this question to some extent in *Newberry v. Walsh,* 20 N.J. 484, 120 A.2d 242. We have likewise read this opinion which very interestingly discusses the "blockage" rule. This Court, that is the New Jersey Court, reaches the conclusion that the tax department in

appraising taxable assets of large blocks of stock should receive and consider evidence and all pertinent conditions, and says in effect that the rule is an element of consideration in fixing the fair value of stock in an estate subject to an inheritance tax and should be used only in certain instances. In other words, the New Jersey Court believes as we do that there is no mandatory requirement—the Legislature did not intend to make it mandatory on the commissioner to accept this valuation alone in determining the full and true value of this stock.

The bill herein which was demurred to averred that the full and true value of the stock was at least one point per share less than that as fixed by the commissioner. There is also an averment that this block of eleven thousand six hundred ninety-three (11,693) shares could not be sold except at a discount of at least one point. This inheritance tax considered to be owing by the estate was valued at $41.75 per share, while the commissioner increased it to $43.00 per share. Under the averments of the bill the true value of the stock was at least one point per share less than that fixed by the commissioner. By the averment of the bill that this is a fact and by its being demurred to, it is admitted. The averments of fact which are admitted by the demurrer is that the full and true value of a large block of stock is not as much per share as that of a small block of stock, and when they are both taxed at their full and true value neither can complain. It cannot be argued without begging the question that small estates should be treated differently from large estates.

As a result of our study of many days and reading authorities on this matter as well as the record, we have concluded that since the bill herein was demurred to and the factual situation and reasonable inferences to be

drawn therefrom properly plead in the bill are thus admitted there will be no reason to remand the case for further proof and evaluation, because the difference in tax has been properly paid and should be returned by the State to the taxpayer along with the State being assessed with the costs of this litigation. The defense of the State is obviously based on the theory and incorrect idea, we think, that the second paragraph of the statute in question (sec. 30-1621, T.C.A.) is mandatory. What we are holding herein is that it is not mandatory and that this is merely one of the methods that may be used by the commissioner in fixing the valuation of an estate, but the commissioner should likewise take into consideration other evidence in arriving at the "full and true value" of the stock to be assessed.

## Opinion On Petition To Rehear

■ Counsel for the State have filed herein a forceful and dignified petition to rehear. The thrust of this petition is that the Court, in writing the opinion in this case, has overlooked the office of the demurrer filed herein, and it is thus forcibly and ably argued that in our determination of the case, if we disagreed with the Chancellor as to his overruling of the demurrer and concluded that the demurrer should have been sustained, the only thing we should have done was to reverse and remand for answer and further pleading.

The brief of the State in this regard is really one of the best treatise on the question that the writer of this opinion has ever seen. It takes up a number of our cases as well as the text relied upon by the courts over a century in this State on the question and analyses them thoroughly and to the point. We, of course, have read and partici-

pated in many of these decisions and are thoroughly familiar with exactly what these rules are and what they mean, if we are familiar with anything in the law.

In considering such rules though we must likewise consider their application to the legal and factual situation of the case wherein they are applied. In this case a re-study of the original briefs herein and of this record clearly shows that the only question considered and wished to be determined by this lawsuit was the application of certain rules therein relied upon. In other words the question herein was the intention of the Legislature in enacting this statute, and this was the question that we were asked to determine. The bill shows without peradventure of a doubt that the small amount that the taxpayer was suing to recover, and which had been collected by the State was brought about by the difference of an interpretation of the rules by the taxpayer and the State. It was alleged in this bill that that was all that the taxpayer sought to recover. Anyone in studying and reading this record must conclude that the question of fact as to the amount of the tax had nothing to do with the litigation. Thus it was, under such a situation, that we must apply the practical meaning of the rules governing the demurrer and its being sustained or overruled. We in effect applied this in *Southall v. Billings,* 213 Tenn. 280, 375 S.W.2d 844, at page 847, when we said this:

"The general object of a demurrer is to save costs and bring the litigation to a speedy close. Section 310, Gibson's Suits in Chancery."

When the record herein was viewed, as it was and as it should be from a study, determination and reading of this record, there is no reason to overrule the demurrer and remand for an answer and proof on these things when the

bill on its face states what this amount was, something a little over a thousand dollars, and there would be no practical reason to remand this case for proof and further litigation. If such were done it could very easily run the costs of the litigation to far more than the amount of tax involved and this is not the purpose of a court. The purpose of a court is to try its best to arrive at the reason, justice and fairness of the situation. In our determination of the question we think we did so and that we reached the right and equitable conclusion in this case.

This case upon the reading and study of the original briefs herein shows without doubt that counsel on both sides gave the question their most able and earnest consideration, and when this is done and nothing new is added then the application of Rule 32 of this Court should be adhered to, which is:

"A rehearing will be refused where no new argument is made, and no new authority adduced, and no material fact is pointed out as overlooked."

The petition to rehear has any number of cases cited here as to what the meaning and what the duty of the Court is in overruling a demurrer to a lawsuit and things of that kind; some of which were cited in the original briefs but what we have just said as to that rule is clearly applicable under the facts here. The argument made by the State in this petition to rehear is a mere repetition of the very thorough treatment of this subject that was given in the original briefs filed by the State in this Court. A re-reading of these briefs will point out again to counsel for the State how true this is. These positions are not changed in one iota by the arguments in this petition to rehear.

As pointed out in our original opinion the gravamen, and clearly the whole thrust of the lawsuit originally, was to determine what was the intent of the Legislature when it enacted the statute in question, sec. 30-1621, T.C.A. It was our purpose, after thoroughly studying and debating this, to answer this question and in doing so we applied the decisions of interpretation as we saw and thought they should be applied to the statute here. In doing so we studied carefully the cases there cited by the State as well as those cited by the taxpayer, and there are no new cases cited in this petition to rehear. The principle that we adopted in our original opinion should be the one to be applied so we think. We also think that we ascertained the intent of the Legislature in our conclusions as stated in the original opinion. After having fully considered this petition to rehear, for the reasons herein stated, it must be overruled.

DYER, CHATTIN and HUMPHREYS, JUSTICES, concur.

MR. JUSTICE CRESON, (dissenting).

It seems to me we should grant this petition to the extent of remanding the cause for such further proceedings as may be appropriate, thus allowing the defendant to plead over after overruling of its demurrer.