IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 10, 2005 Session

## FRANKLIN CAPITAL ASSOCIATES, L.P. v. ALMOST FAMILY, INC. f/k/a CARETENDERS HEALTH CORPORATION

**Appeal from the Chancery Court for Williamson County**
**No. 26976      Robert E. L. Davies, Judge**

---

**No. M2003-02191-COA-R3-CV - Filed December 21, 2005**

---

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

## OPINION ON PETITION TO REHEAR

This court issued an opinion on November 29, 2005 affirming in part and modifying in part the trial court's judgment, the result of which was an award of damages against Almost Family, Inc., f/k/a Caretenders Health Corporation, (Caretenders) in the amount of $658,886.50 in favor of Franklin Capital Associates, L.P. *See Franklin Capital Associates, L.P., v. Almost Family, Inc., f/k/a Caretenders Health Corporation*, No. M2003-02191-COA-R3-CV, 2005 WL 3193688, (Tenn. Ct. App. Nov. 29, 2005). On December 9, 2005, Franklin filed a timely petition for this court to rehear that portion of the case relating to the application of a block discount to determine Franklin's damages.[1] Having considered the petition for rehearing, we have concluded the trial court did not err by applying a block discount to determine Franklin's damages. Accordingly, we deny the petition for rehearing.

The trial court applied a conversion measure of damages. Damages in a conversion action are generally determined by the fair, reasonable market value of the property at the time and place of conversion. *Lance Productions, Inc. v. Commerce Union Bank,* 764 S.W.2d 207, 213 (Tenn. Ct. App. 1988); 18 AM. JUR. 2d, *Conversion* § 116 (2005). Franklin contends the measure of damages for conversion requires the assessment of its damages at the price at which Franklin could have purchased a share of Caretenders, the so-called New York rule. (See *Hedges v. Burke*, 247 S.W. 91 (Tenn. 1922)(holding the plaintiff's damages are equal to the replacement cost, the price at which

---

[1] Franklin correctly notes that this court erroneously stated in its opinion filed on November 29, 2005 that the parties do not dispute the propriety of the block discount. To the contrary, Franklin did indeed dispute the propriety of the discount in its brief.

the plaintiff could have purchased the converted property in the open market)). We find this argument to be without merit because it is based upon a false premise, that the shares at issue would not be subject to a block discount.

The practice of discounting the value of the price per share of a large block of shares in a limited market is known as a "block discount." Utilization of a "block discount" to value stocks developed in recognition of the fact that large blocks of stock cannot be sold as readily as smaller blocks of stock. *See* G.H. Fisher, Annotation, *Application of "Blockage Rule" or "Blockage Discount Theory" in Determining Stock Valuation, for Purposes of Taxation of Intangibles*, 33 A.L.R.2d 607 (2004). Block discounts are often used in cases involving estate or inheritance tax. *Id*. Tennessee courts recognize the block discount as a factor that may be considered when valuing shares. *Hamilton National Bank of Knoxville v. Benson,* 444 S.W.2d 277 (Tenn. 1969); *see also* Tenn. Code Ann. § 67-8-412 (2003).

After determining the price per share of Caretenders' stock, the trial court considered uncontroverted testimony as to the impact of 890,349 shares on the market value of the shares. Paul Mallarkey, an expert witness called by Caretenders, testified that the block discount measures the effect on the price per share. He further explained that a block discount was appropriate when a large block of "thinly-traded" stock is to be sold. Mr. Mallarkey also explained that "thinly traded" stock is stock that is traded infrequently and/or in low volumes. The evidence established that an average weekly trading volume for Caretenders' stock was approximately 100,000 shares a week, which is indicative of a market that is not prepared to absorb 890,349 additional shares in a brief period of time. In the absence of a ready market for such a large block of stock, Mr. Mallarkey explained, the market would discount the price.

The evidence established that a willing purchaser would have agreed to purchase and a willing seller would have agreed to sell 890,349 of Caretenders' shares for the discounted price of $1,963,219.50.[2] Nevertheless, Franklin contends a block discount should not be applied. This contention by Franklin presumes a reasonable purchaser would have agreed to purchase the large block of thinly-traded stock without demanding the market driven discount. Franklin failed to convince the trial court a reasonable purchaser would consider the non-discounted price to be a reasonable market value. We, too, are unconvinced. Moreover, we find that the trial court correctly considered the specific facts of this case in determining that a reasonable market value of the 890,349 shares of Caretenders' stock at issue must reflect the block discount.[3]

---

[2] $1,963,219.50 is the product of 890,349 shares multiplied by the price per share reduced by the twenty-five percent block discount.

[3] It should also be noted that the market value of converted property is not the only measure of damages recoverable in an action for conversion. 18 AM. JUR. 2d, *Conversion* § 116 (2005). The circumstances of the case may require a different standard. *Id*. Rules relating to the measure of damages for conversion are flexible and can be modified in the interest of fairness. *Id*. Based upon the evidence in the record, it is not necessary that we consider other standards.

As a final contention, Franklin suggests that even if a block discount could properly be applied on the theory that Franklin would have had been subject to such a discount on its sale of such shares, Franklin "would have distributed the shares to its investors, not sold the shares. . . ." This, Franklin contends, would have made the block discount inapplicable. We decline the invitation to analyze this theory because we view it as merely hypothetical. The trial court made a finding it was Franklin's intention to sell the shares, which finding is fully substantiated by the record. Moreover, Franklin's present contention is not fully consistent with its previous spin on this issue in its Appellee's Brief. Though it is of little legal significance, it is worth noting Franklin previously referred to its proclaimed intent to distribute the shares as a "could have" scenario; yet Franklin now suggests it "would have" distributed the shares.[4]

Therefore, we find no error with the trial court's application of a block discount. The petition for rehearing is respectfully denied and costs relative to this petition are assessed against Appellee, Franklin Capital Associates, L.P.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[4] Franklin's brief read, "had the shares been registered, [Franklin] could have distributed the shares to its limited partners who could have sold the shares themselves. . . ." (See the Appellee's Brief submitted by Franklin, at page 45).