JAMES INGRAM, et al

*v.*

HOWARD BURNETTE, et al

(*Knoxville,* September Term, 1957.)

Opinion filed September 1, 1958.

McCLUEN & COOLEY, Rockwood, for plaintiffs in error.

J. E. PEARMAN, Harriman, O'NEIL & JARVIS, Knoxville, for defendants in error.

MR. JUSTICE PREWITT delivered the opinion of the Court.

This is an election contest arising out of the general City election held in Kingston on June 29, 1957, for the purpose of electing a Mayor and six Aldermen for said City.

The suit is not brought to seat, or unseat any particular candidate, and it is not a contest wherein an individual is seeking to have himself declared elected. It appears that one of the petitioner's was elected as an Alderman in this election, rather, the petitioners claim that an illegal and fraudulent scheme was perpetrated which nullified the will of the qualified voters so as to render the entire election invalid, and the petition prayed that said election be declared void. *State ex rel. Davis v. Kivett, et al,* 180 Tenn. 598, 177 S.W.2d 551.

A demurrer was filed to the bill by some of the defendants and a sworn answer by others. The only evidence produced at the trial was presented on behalf of the petitioners.

The Circuit Judge heard a large number of witnesses and declared the election void under the authority of *State ex rel Davis v. Kivett, et al, supra.* This appeal resulted.

The town of Kingston was created by Chapter 328 of the Acts of 1903, Sections 4 and 7 thereof provide in pertinent parts as follows:

"Sec. 4. . . . Any person who is a qualified voter for members of the General Assembly under the laws of Tennessee, in Roane County, and who shall have been a resident of said town for thirty days preceding the date of election . . ., and also any other person who is a qualified voter in Roane County for members of the General Assembly of Tennessee and is an owner of real estate in fee inside of said town of Kingston, although he may not be a resident thereof, shall be entitled to vote."

"Sec. 7. . . . the Mayor and Aldermen shall have the right to make such regulations as they think best, touching the manner of holding elections, notice of the same, and certifying the results, which regulations shall not be in conflict with the Constitution and general laws of Tennessee; . . . said election shall in all cases be held under the general laws of the State.''

It was alleged that a supporter of Mr. Burnette, a candidate for the office of Mayor, and supporters of candidates for the office of Aldermen, conceived the fraudulent scheme of purchasing certain city lots and creating therefrom a fictitious subdivision known as Freedom Heights; that six City lots were accordingly purchased by one C. E. Scott on April 17, 1957, and that he then re-subdivided a part of these six lots so as to form two hundred new lots, each of which was 5 feet by 12½ feet in size, designated the remainder of these lots ''for future development,'' named the project Freedom Heights Subdivision, and recorded a plat thereof in the Register's Office of Roane County.

The Circuit Judge found that the uncontradictory evidence in the case led to but one conclusion, that the deeds presented by the 138 non-resident voters, who were not registered as owning any real estate property within the city limits of Kingston, and whose only claim of voting qualification was their deed, which were in fact deeds to lots in Freedom Heights Subdivision, were tainted with fraud plainly written across the entire face of the whole scheme. He further found that these 138 people voted illegally in the election.

■■ A total of 909 votes were cast. The 138 illegal vote constituted 15.18 of the total. The rule of appor-

tionment of illegal votes applies only where the contest is between individual candidates, one endeavoring to unseat the other. It does not apply where, as here, there are numerous successful and unsuccessful candidates and the entire election is attacked as illegal and void. The rule to be applied in the latter situation is to consider all of the illegal votes as having been voted one way, and then ascertain whether the results of the election would thereby have been changed. *Nelson v. Sneed,* 112 Tenn. 36, 83 S.W. 786; *Maloney v. Collier,* 112 Tenn. 78, 83 S.W. 667; *Barham v. Denison,* 159 Tenn. 226, 17 S.W.2d 692; *Jared v. Fitzgerald,* 183 Tenn. 628, 195 S.W.2d 1.

In this case the votes cast and counted for the unsuccessful contestants and for the successful contestees were as follows:

For Mayor: James Ingram, 393; Howard Burnett, 494, majority over Ingram of 101.

For Alderman: James P. Anglin, 313; Alton Byrd, 562, majority over Anglin, 249; Curtis C. Talyor, 557, majority over Anglin 244; W. L. Harwell, 418, majority over Anglin 107; W. B. Kelsay, 413, majority over Anglin 100; Chester Fultz, 356, majority over Anglin 43.

If all 138 of the illegal votes in this election be considered as having been cast for these successful contestees, and deducted from their respective totals, the contestant Ingram would have been elected Mayor, and the contestant Anglin would have been elected as an Alderman, and the contestee Fultz would not have been elected. On the other hand, the same result would have been obtained if all 138 illegal votes be considered as having been cast for contestants Ingram and Anglin, and

added to their respective totals. In either view these illegal votes were sufficient to change the result of the election.

■■ It is not any easy task for the courts of our State to set aside and declare elections void. The Courts appreciate the fact that honest mistakes will be made in the conduct of elections. The whole object of our election laws passed by the Legislature over the years has been with the idea of maintaining fair and honest elections. So it is if mistakes have been made and even though fraudulent ballots have been cast, if the Courts can purge the illegal ballots or fraudulent ballots without affecting the result of the election, this will be done.

But where the proof shows, as in this case, that the election is so permeated with fraud that the result of the election would have been changed had it not been for these fradulent ballots, the Court will not hesitate to declare the election void.

Let the judgment of the lower Court be affirmed.

NEIL, CHIEF JUSTICE, not participating.