**Robert (Bob) MILLAR, Appellant,**

v.

**Robert S. THOMAS, et al., Appellees,**

Supreme Court of Tennessee,
at Jackson.

Sept. 28, 1983.

Robert (Bob) Millar, pro se.

Shuttleworth, Smith, Millar & Sabbatini, Memphis, for appellant.

J. Houston Gordon, Walker T. Tipton, Covington, Lyle Reid, Brownsville, W. Lee Lackey, Lackey & Lackey, Savannah, for appellees.

OPINION

FONES, Chief Justice.

This is an appeal from an election contest involving the validity of the election for the office of Chancellor of the Ninth Chancery Division held on August 5, 1982.

The Election Commission certified that defendant Robert S. Thomas was elected over plaintiff Robert (Bob) Millar by a mar-

gin of 162 votes. Plaintiff brought suit against defendant Thomas and the nine counties comprising the Ninth Chancery Division, alleging multiple irregularities in the absentee and precinct voting. By consent order, before trial, six counties were dismissed from the suit, leaving only three, namely Haywood, Hardin and Tipton.

Plaintiff asserts as the basis of his claim various acts and omissions on the part of the Election Commissions such as: improper registration of voters, improper procedural acts with reference to handling of absentee ballots, improper validation of Haywood County absentee ballots cast by mail by reason of sickness, hospitalization or physical disability which were unaccompanied by physician's affidavits, mechnical malfunction of voting machines and computers, among others.

At the beginning of trial the parties stipulated that the election was free of any intent to commit fraud, and further, that there was no fraudulent conduct in the election.

The learned chancellor expressed the opinion that in the absence of fraud, the rule was that acts or omissions are harmless unless they are designed to or are likely to corrupt the election process to the extent that it does not express the free and fair will of the qualified voters. A specific finding was made by the trial court that the Haywood County absentee ballots cast by reason of sickness, hospitalization or physical disability were valid and did not have to be accompanied by a physician's affidavit, unless the voter was requesting to be put on a permanent absentee voting register. In addressing the remaining averments of plaintiff, the chancellor held that to declare votes illegal because of insignificant acts committed by someone in the election commission office would work a disenfranchisement of an otherwise qualified voter from expressing his free will at the ballot box. At the close of appellant's proof, the chancellor refused to void the election or change the result finding that the election did express the free and fair will of the qualified voters and should be upheld.

■ Tennessee law empowers a court to void an election on two alternative, but closely related bases. First, "upon a sufficient quantum of proof that fraud or illegality so permeated the conduct of the election as to render it incurably uncertain, even though it cannot be shown to a mathematical certainty that the result might have been different." *Emery v. Robertson County Election Com'n,* 586 S.W.2d 103, 109 (Tenn.1979); *see also, State ex rel. Davis v. Kivett,* 180 Tenn. 598, 177 S.W.2d 551 (1944); *Ingram v. Burnette,* 204 Tenn. 149, 316 S.W.2d 31 (1958). Secondly, where some ballots are found to be illegal, the number of illegal votes cast is equal to, or exceeds, the margin by which the certified candidate won. *Emery v. Robertson County Election Com'n, supra; Hilliard v. Park,* 212 Tenn. 588, 370 S.W.2d 829 (1963).

As the parties stipulated, and the chancellor so held, the election was void of any fraudulent intent of acts. Therefore, the issue before this Court is whether the number of illegal votes cast were equal to or exceeded the margin by which Thomas was certified to be the successful candidate.

Plaintiff claims that a number of illegal absentee votes were cast that exceed the difference in the vote between plaintiff and defendant. Plaintiff asserts that a total of 251 illegal absentee ballots were cast, which would, mathematically, exceed the number defendant won by, 162. Out of the allegedly illegal 251 absentee votes, plaintiff avers that 167 were illegal because they were unaccompanied by a physician's statement, which he asserts is a mandatory requirement under T.C.A. § 2–6–102(4).

Plaintiff relies on *Hillard v. Park, supra.* The statutes in effect at the time that case was decided specifically required a medical certificate to vote by absentee ballot. T.C.A. § 2–1603, which was repealed in 1972, provided in part:

> ... that any voter, giving notice of her or his desire to vote by absentee ballot, while within the county, because of illness or physical disability, shall attach to said notice a statement from a licensed

physician certifying that the illness or disability of said voter is such that said voter cannot safely appear at the voting precinct in person.

The *Hillard* court, noting the legislative mandate, stated:

T.C.A. § 2–1603 requires the sick and disabled within the county to prove that they cannot safely appear at the voting precinct in person, by attaching to their application for absentee ballot a certificate to that effect signed by a licensed physician. The sick and the disabled within the county are required to submit proof, written proof, to the county election commission upon which that commission may determine judicially whether the application is sufficient.

*Id.* at 834.

However, since 1963, when *Hillard* was decided, the election laws have been a constant state of flux. The greatest single change occurred in 1972 when the entire group of election laws, Title 2, was repealed and replaced by Chapter 740, Public Acts of 1972. The stated purpose of the new statutes was:

[a]n act to restate, supplement, consolidate, clarify and revise the election laws of this State and other matters related to them in order to establish a uniform law of elections protecting the freedom and purity of elections; to repeal all laws in conflict with this Act and to repeal specifically ... [enumerated statutes].

The plaintiff argues that the physicians statement requirement from the older statutes controlling in *Hillard* is still a "mandatory condition" under our present statutes.

T.C.A. § 2–6–102(6) authorizes voters to vote absentee, "by personal appearance ... if due to hospitalization, illness or physical disability the person will be unable to appear at his polling place on election day."

■ A physician's statement is required only under the circumstances set out in T.C.A. § 2–6–102(4), to-wit: when a voter wants to be included on a permanent absentee voting register. In this limited circumstance, a physician's statement is both reasonable and necessary as persons desirous of being included on a permanent absentee voting register are automatically sent an application for absentee ballot for all elections, without the necessity of their executing an application.

■ This Court, considering these current statutes in pari materia, holds that a person may vote absentee if due to hospitalization, illness or physical disability the person will be unable to appear at his polling place on election day and it is not necessary that a declaration that the person will be unable to appear be supported by a physician's statement.

■ Since the record reflects that the Haywood County voters were not attempting to be placed on a permanent register, a physician's statement was not required and therefore these 167 absentee votes are not void or illegal, but rather are valid. This finding is dispositive of this issue as without these ballots plaintiff, even assuming arguendo, that all the other votes he alleges are illegal, are in fact illegal, still has fewer votes than his opponent and hence does not have enough votes to change the outcome of the election.

The judgment of the chancellor is affirmed. The Clerk of this Court is directed to send a copy of this opinion to the Secretary of State with instructions to issue a certificate of election declaring Robert S. Thomas duly elected as Chancellor of the Ninth Chancery Division for the term that began September 1, 1982.

Costs are adjudged against plaintiff.

BROCK, HARBISON and DROWOTA, JJ., and HUMPHREYS, Special Justice, concur.