David A. STUART

v.

## ANDERSON COUNTY ELECTION COMMISSION, et al.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

March 20, 2007 Session.

April 13, 2007.

Order on Petition to Rehear Denied April 27 and 30, 2007.

Permission to Appeal Denied by Supreme Court Sept. 17, 2007.

David A. Stuart, pro se Appellant.

William A. Reeves, Knoxville, Tennessee, for the Appellee, Anderson County Election Commission.

Robert W. Knolton, Oak Ridge, Tennessee, for the Appellee, Don A. Layton.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

This is an election contest brought by David A. Stuart ("Plaintiff") who lost the August 2006 general election for Anderson County General Sessions Court Judge, Division I. Plaintiff lost the election by a margin of 119 votes. In the complaint, Plaintiff alleges various irregularities in how the election was conducted, that these irregularities render certain votes illegal, and that the number of illegal votes exceeds the margin of victory. Plaintiff seeks to have the election declared invalid. The Trial Court dismissed the complaint after finding that Plaintiff failed to state a claim upon which relief could be granted. We affirm in part, vacate in part, and remand for further proceedings.

## Background

Plaintiff was a candidate for Anderson County General Sessions Court Judge, Division I, in the August 2006 general election. The opposing candidate was Don A. Layton ("Layton"). Layton received 6,966 votes, and Plaintiff received 6,847 votes. Thus, Plaintiff lost by a margin of 119 votes. Plaintiff timely filed this lawsuit contesting the election. The issues in this appeal involve whether Plaintiff's complaint states a cause of action. Due to the nature of the issues, we, reluctantly, must quote much of the complaint in this case. The complaint provides:

At all times material hereto, the following Statute of the State of Tennessee, as set forth in the Tennessee Code Annotated, was in full force and effect:

**2–7–118. Time limit for voting— Removal of voter.**—(a) No voter who is voting without assistance may remain in a voting machine booth or occupy a voting compartment for more than five (5) minutes if other voters are waiting or more than ten (10) minutes in any event.

(b) If a voter refuses to leave after such time elapses, the officer of elections shall have the voter removed.

Plaintiff alleges that large numbers of voters exceeded the time limits set forth in the above-quoted statute, and that the officer of elections deliberately took no action whatsoever to enforce the requirements of the statute. Plaintiff alleges that the average length of time spent by each voter in the booth on election day was in excess of six and eight-tenths (6.8) minutes, that many voters took between five (5) and ten (10) minutes while other voters were waiting, and that many voters took over ten (10) minutes to vote while other voters were waiting. Plaintiff also alleges, on information and belief, that the time limits

set forth in the above-quoted statute were exceeded on occasions throughout the early voting period.

Plaintiff alleges that during the time voters were exceeding the time limits, other people were waiting to vote, and that many of these people quit waiting and left the precinct before voting, because of the illegal delay caused by the failure of the officer of elections to enforce the time limits prescribed by law. A substantial number of prospective voters who left without voting had received ballot applications which were never presented to the machine operator, and they left when the time limits were being violated. Other substantial numbers of prospective voters left the ballot application line without receiving their ballot applications after waiting in line for excessive time periods, and they left when the time limits were being violated.

In addition to the foregoing allegations pertaining to the disenfranchisement of certain voters due to violations of the time limits, plaintiff alleges that all votes which exceeded the time limits for voting are illegal votes and should be disregarded.

In addition to the foregoing, plaintiff alleges that voting machines were used at every precinct in the election in question, that the Highland View Precinct is one of the precincts involved in the conduct of the election, and that none of the machines being used at that precinct became out of order during the election. At the Highland View Precinct, at some point during the day, paper ballots were issued to people waiting to vote, and they were permitted to vote by paper ballot rather than machine, in violation of Tenn.Code Ann. §§ 2–7–108, 2–7–119 and 2–9–109, and other provisions of law, and without the approval of the administrator of election or the filing of a written report of the circumstances causing the use of paper ballots, as required by Tenn.Code Ann. § 2–7–108. This violation is compounded by the fact that earlier in the day, people waiting to vote were not issued paper ballots, and some of those people left without voting rather than wait while other voters were exceeding the time limits previously described. Plaintiff alleges that all paper ballots in the Highland View Precinct or in any other precinct which were issued in the absence of a machine out of order or other legal justification are illegal votes and should be disregarded.

In addition to the foregoing, plaintiff alleges that in some instances in the South Clinton Precinct on election day, the voting registrars did not require voters to present any evidence of identification for examination and comparison, as required by Tenn.Code Ann. § 2–7–112. Plaintiff therefore alleges that all votes cast without the required presentation, examination and comparison of evidence of identification in the South Clinton Precinct or in any other precinct are illegal votes and should be disregarded.

As a direct and proximate result of the foregoing violations, or any of them, plaintiff alleges that fraud or illegality so permeated the conduct of the election as to render it incurably uncertain. With a margin of less than one percent (1%), comprised of 119 votes, separating the plaintiff and the defendant, Layton, with the average time spent by each voter on election day being in excess of six and eight-tenths (6.8) minutes, with many voters on election day having spent in excess of ten (10) minutes voting, with numerous registered qualified voters having left the polling place without voting while others were exceeding the time limits, with substantial numbers of illegal paper ballots having been allowed

to be cast rather than machine votes as required by law, and with voters not being required to present evidence of identification for examination and comparison at the polling place as required by law, the election is incurably uncertain. Additionally, the violations of the election law described herein compel the conclusion that the election did not express the free and fair will of the qualified voters with regard to the office in question.

\* \* \*

Your plaintiff would respectfully request that, in connection with this election contest, this Honorable Court issue an Order, pursuant to Tenn.Code Ann. § 2–8–108, providing access to all paper ballots cast in the election, so that the validity or invalidity of said ballots can be ascertained. Additionally, your plaintiff would request this Honorable Court to issue an Order requiring the Anderson County Election Commission to preserve all records and electronic data pertaining to the election in question as evidence for examination in this cause.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF REQUESTS THE FOLLOWING RELIEF:

\* \* \*

That this Honorable Court Enter an appropriate Order, providing that the packages of paper ballots cast in the election be opened and examined for the purpose to (sic) determining that they were counted correctly, and to verify that they are otherwise lawful and valid in all respects. . . .

That this Honorable Court find and determine that every person who received a ballot application and left while the time limits were being violated should have been permitted to vote, and that there are more voters in that category than the margin of victory in this election.

That this Honorable Court find and determine that every vote cast more than 10 minutes after a voter voting without assistance entered the booth or voting compartment is an illegal vote, and that there are more votes in that category than the margin of victory in this election.

That this Honorable Court find and determine that every vote cast between five (5) and 10 minutes after a voter voting without assistance entered the booth or voting compartment, while other prospective voters were waiting, is an illegal vote, and that there are more votes in that category than the margin of victory in this election.

That this Honorable Court find and determine that every person who waited in line at a voting precinct while the time limits were being violated should have been permitted to vote, and that there are more persons in this category than in the margin of victory in this election.

That this Honorable Court find and determine that all paper ballots issued at voting places while machines were not out of order or for other legal reason are illegal votes, and that there are more votes in this category than the margin of victory in this election.

That this Honorable Court find and determine that the failure to require presentation of evidence of identification for examination to the registrar at the South Clinton Precinct or any other precinct rendered the subsequently cast vote an illegal vote, and that there are more such votes in this category than in the margin of victory in this election.

That after determining the number of persons illegally denied their right to

vote and the number of illegal votes for any of the reasons alleged herein, that this Honorable Court find and determine that the aggregate of those numbers is in excess of the margin of victory in this election. . . .

Defendants Layton and Anderson County Election Commission filed motions to dismiss pursuant to Tenn. R. Civ. P. 12.02(6), asserting that the complaint failed to state a claim upon which relief could be granted. Following a hearing, the trial court granted the motion to dismiss, stating as follows:

This is a Motion to Dismiss, therefore, the allegations in the complaint must be viewed by the Court as truth. And viewed as true, it must be assumed for purposes of this argument that various voters—the number not being identified—however, various numbers of voters took more time in the booth than the statute allows. The Court must assume that various voters caused the delay and did not choose to exercise their constitutional right to vote. The Court must take as true the issue with regard to the paper ballots. The Court must take as true all other allegations of the complaint concerning the irregularities in the election process.

Taking that as true, the Court finds that certain statutory provisions, however, were violated by the Election Commission here in Anderson County, Tennessee. Going one step further, the allegations in the complaint say that the actions by the Anderson County Board of Elections—there is an allegation that these were deliberate and that they deliberately chose not to enforce these provisions—having said that, a deliberate action is not necessarily a fraudulent action. The question is: Even if it were deliberate, was it done with intent to intimidate or done with the intent to affect the outcome of the election or was it an action taken to allow true expression of the vote in this County? To void an election based upon statutory violations of the election laws, I believe my research has concluded that the alleged wrongs must be so gross and palpable, and a failure of the opportunity for free and equal expression of the popular will that the courts cannot let the election stand.

Now the cases that the Court has reviewed that have dealt with alleged violations of the statutory provisions regarding elections were the conscious efforts by the Election Commission to disenfranchise a certain number of people through voter intimidation, fraud in the electoral process, all done with an effort to affect the outcome of the election. . . . [T]he Court finds that the allegations [in the complaint] will not support anything other than the conclusion that these were honest mistakes and mere omissions or irregularities in directory matters.

The Court doesn't find that they are gross. Even if gross, if they are not fraudulent, these mistakes will not void an election if not fraudulent. The Court can find no allegations of fraud in this complaint. Based upon these irregularities, the Court cannot say this election would be voided. To take a giant leap of voiding the counting of votes as illegal, and votes that took over six minutes, would be to disenfranchise a large number of the voters in Anderson County, which is not the intent of the election statutes. Therefore, the Court must conclude that the Motion to Dismiss is well taken and should be granted.

### Discussion

◼ Our standard of review as to the granting of a motion to dismiss is set out

in *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714 (Tenn.1997). In *Stein,* our Supreme Court explained:

A Rule 12.02(6), Tenn. R. Civ. P., motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof. Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. In considering a motion to dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and deny the motion unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn.1994). In considering this appeal from the trial court's grant of the defendant's motion to dismiss, we take all allegations of fact in the plaintiff's complaint as true, and review the lower courts' legal conclusions *de novo* with no presumption of correctness. Tenn. R.App. P. 13(d); *Owens v. Truckstops of America,* 915 S.W.2d 420, 424 (Tenn.1996); *Cook, supra.*

*Id.* at 716.

In *Forbes v. Bell,* 816 S.W.2d 716 (Tenn.1991), our Supreme Court discussed at length the procedures for having an election set aside pursuant to Tenn.Code Ann. § 2–17–101, *et seq.* The *Forbes* Court began by observing that there are two grounds upon which an election contest can be based. The first ground involves a claim that the election was valid, but that the contestant, rather than the contestee, would be the winner if the outcome was properly determined. *Id.* at 719. If the contestant is successful in court, the proper relief in this type of case is a judgment declaring the contestant the winner. The second ground is a claim that the election was null and void. *Id.* The proper remedy in this second situation, if the contestant is successful in court, is to order a new election.

Plaintiff's complaint never states or even suggests that the election was valid and that he would have been the winner had the outcome of the election been properly determined. Instead, the entire complaint focuses on Plaintiff's allegations that the election should be set aside and the Trial Court should order a new election. Thus, we are dealing only with the second ground for contesting an election discussed above.

In *Forbes,* the Court stated:

With respect to election contests seeking to have an election declared invalid, this Court has stated:

Tennessee law empowers a court to void an election on two alternative, but closely related bases. First, "upon a sufficient quantum of proof that fraud or illegality so permeated the election as to render it incurably uncertain, even though it can not be shown to a mathematical certainty that the result might have been different." *Emery v. Robertson County Election Comm'n,* 586 S.W.2d 103, 109 (Tenn.1979); *see also State ex rel Davis v. Kivett,* 180 Tenn. 598, 177 S.W.2d 551 (1944); *Ingram v. Burnette* 204 Tenn. 149, 316 S.W.2d 31 (1958). Secondly, where some ballots are found to be illegal, [and] the number of illegal votes cast is equal to, or exceeds the margin by which the certified candidate won. *Emery v. Robertson County Election Comm'n, supra; Hilliard v. Park,* 212 Tenn. 588, 370 S.W.2d 829 (1963).

*Millar v. Thomas,* 657 S.W.2d 750, 751 (Tenn.1983).

First addressing Forbes's claim that the election should be declared void because of election irregularities that resulted in a number of allegedly illegal votes, we hold that she has failed to state a claim for the same reason that she failed to state a claim that she should be declared the winner of the election. The omission of a statement setting out the margin of Bell's victory precludes a grant of relief on this ground. Although requirements for declaring an election void based upon allegations of illegal voting are less stringent than are the requirements for declaring a contestant the victor, *Blackwood v. Hollingsworth, supra,* [195 Tenn. 427,] 260 S.W.2d [164] at 166 [ (1953) ], those allegations must still be specific enough to establish that absent the allegedly illegal votes, the result of the election would have been different.

In cases in which the contestant seeks to have the election declared void, the prescribed methodology is for the court to consider all of the illegal votes as having been voted one way (against the contestee) and then to ascertain whether the results of the election would thereby have been changed. *Ingram v. Burnette,* 204 Tenn. 149, 316 S.W.2d 31, 32 (1958); *see also Jared v. Fitzgerald,* 183 Tenn. 682, 195 S.W.2d 1 (1946). But even if we were to assume in this case that all of the allegedly illegal votes were cast for Bell, there is no basis in Forbes's complaint or amended complaint upon which to say that the deduction of this number of votes from Bell's total would have produced a different result or rendered the outcome in doubt. Hence, we must hold as to this basis for contest that Forbes's pleadings have failed to state a claim for which relief can be granted.

This ruling leaves Forbes with only one remaining avenue for relief, based on a claim that the election should be invalidated because it was so permeated with fraud and illegality that it cannot be said to fairly reflect the will of the voters. As to this ground, it is not necessarily fatal that the complaint does not specifically set out a sufficient number of illegal votes to change the result of the election or to make the result mathematically uncertain. *Southall v. Billings, supra,* [213 Tenn. 280,] 375 S.W.2d [844] at 849 [ (1963) ]. To void an election on this basis, however, the alleged wrong must be so gross and palpable a failure of the opportunity for a free and equal expression of the popular will, that the courts cannot permit the election to stand. *Barry v. Lauck,* 45 Tenn. 588 (1868). Honest mistakes or mere omissions, or irregularity in directory matters—even though gross—if not fraudulent, will not void an election unless they affect the result or at least render it uncertain. *Summitt v. Russell,* 199 Tenn. 174, 285 S.W.2d 137, 141 (Tenn.1955).

Most election contests brought on this theory are based on claims of fraud or conspiracy, but the cases do recognize that statutory violations alone may be sufficient to render an election void. In reviewing a complaint that does no more than allege statutory violations, however, the focus of the court's inquiry must be kept in mind—that is, whether the violations are so serious as to thwart the will of the community upon a particular question. *Browning v. Gray,* 137 Tenn. 70, 191 S.W. 525, 526 (Tenn.1916) (citing *Barry v. Lauck, supra,* 45 Tenn. at 593). Toward that end, the *Browning* court quoted *Barry v. Lauck,* as follows:

"... Whatever statutory provisions are essential to the attainment of this end, are obviously indispensable; and whatever precautions prescribed by

statute against mistake or fraud are of such a nature that their omission in the particular instance has resulted in a fraud upon the electors, or has rendered the result of the election incurably uncertain, or the future omission of which, in the future, if permitted, must necessarily prove avenues of fraud, tend to prevent a fair exercise of the franchise, or to render elections insecure and uncertain, must be held to be a matter of substance, and essential to the validity of the proceeding."

*Browning* 137 Tenn. at 73, 191 S.W. 525.

It follows as a corollary that technical non-conformity with election statutes will not necessarily void an election, as "such strictness would lead to defeat rather than uphold, popular election, and can not be maintained." *McCraw v. Harralson* 44 Tenn. 34 (1867). Invalidating an election solely on the basis of technical omissions, much like failing "to cross a 't' or dot an 'I'," would effectively disenfranchise voters. *Foust v. May*, 660 S.W.2d 487, 490 (Tenn.1983).

*Forbes*, 816 S.W.2d at 719–21.

The contestant in *Forbes* alleged election voting irregularities in both Williamson and Hickman County. The allegations with regard to Hickman County were more substantial and included, *inter alia:* (1) the improper utilization of paper ballots in conjunction with voting machines when the voting machines were not out of order; (2) paper ballots at one precinct being cast in violation of the statute rendering all 153 ballots "illegal"; (3) allowing ballot boxes to be unlocked in violation of Tenn.Code Ann. § 2–7–109; (4) voters using paper ballots not being provided private voting compartments as required by relevant statutes; (5) voters using paper ballots turning in the ballots to election officials, as opposed to depositing them into a locked box; and (6) lines of voters were allowed to accumulate at one precinct because the election officials did not strictly enforce the "time limits for voters to use the voting machines thereby causing registered voters to leave the voting place without voting after a wait of at least one and a half to two hours." *Id.* at 722–23. The Supreme Court concluded that these allegations failed to state a claim upon which relief could be granted to have the election set aside on the basis that it was so permeated with fraud and illegality that it could not be said to fairly reflect the will of the voters.

■ The allegations of illegality in the present case are certainly no more serious than those at issue in *Forbes* which were found by the Supreme Court to be insufficient as a matter of law to set aside the election on the basis that the election was permeated with irregularities. We conclude, as did the Court in *Forbes* and the Trial Court in this case, that the allegations of misconduct on the part of election officials were insufficient to taint the election. *Id.* at 723. Thus, of the two bases upon which Plaintiff seeks to have this election declared invalid, the Trial Court correctly held that Plaintiff fails to state a claim upon which relief can be granted as to the first basis, that illegality so permeated this election "that it cannot be said to fairly reflect the will of the voters." *Id.* at 720.

■ This, however, does not end our inquiry. According to *Forbes*, a second basis upon which a contestant can have an election held invalid is "where some ballots are found to be illegal, [and] the number of illegal votes cast is equal to, or exceeds the margin by which the certified candidate won." *Forbes*, 816 S.W.2d at 720 (quoting *Millar v. Thomas*, 657 S.W.2d 750, 751 (Tenn.1983)). *See also Emery v. Robertson County Election Commission*, 586

S.W.2d 103, 108–09 (Tenn.1979)("The reported decisions of this State uniformly authorize the courts to void an election where the evidence reveals that the number of illegal ballots cast equals or exceeds the difference between the two candidates receiving the most votes. The rule is based upon the rationale that if all of the illegal votes had been cast for the unsuccessful candidate the result would have been changed.").

Plaintiff's complaint is replete with allegations that many votes were illegal, why those votes were illegal, and that the number of those claimed illegal votes exceeds the margin by which defendant Layton won the election. In short, Plaintiff's complaint alleges that there are one hundred twenty plus illegal votes. Unlike the plaintiff in *Forbes*, Plaintiff's complaint did include a statement setting out the 119 vote margin of victory, and further included an allegation that the number of claimed illegal votes was sufficient so that the deduction of those votes from Layton's total "would have produced a different result or rendered the outcome in doubt." *Id.* at 720. It is not fatal to Plaintiff's complaint at this motion to dismiss stage that rather than stating a specific number of claimed illegal votes, Plaintiff instead alleges that the number of illegal votes exceeds the 119 vote margin of victory. Plaintiff's complaint, liberally construed, alleges that the number of claimed illegal votes is at least 120. Taking these factual allegations as true, which we must at this stage of the proceedings, Plaintiff's complaint does state a cause of action upon which relief can be granted on this second basis that the number of claimed illegal votes cast is 120 or more. Therefore, we vacate the Trial Court's dismissal of this action but only as to this sole basis. In so doing, we express absolutely no opinion on the merits of Plaintiff's case. On remand the Trial Court must determine whether any votes cast are illegal for the reasons claimed by Plaintiff and, if so, whether those votes cast that are determined to be illegal are equal to or exceed the margin of victory of 119 votes.

### Conclusion

The judgment of the Trial Court is affirmed in part and vacated in part, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are taxed one-half to the Appellant, David A. Stuart, and his surety, and one-half to the Appellee, Anderson County Election Commission.

### ORDER ON PETITION TO REHEAR

Appellee, Don A. Layton, has filed a Petition to Rehear pursuant to Rule 39 of the Tennessee Rules of Appellate Procedure. We find, contrary to Appellee's insistence, that our Opinion does not misapprehend or overlook any material fact in the record or proposition of law for the reasons stated in our Order denying the Petition to Rehear filed by the Appellee, Anderson County Election Commission.

Appellee's Petition for Rehearing is DENIED. Costs related to this Petition are assessed to the Appellee, Don Layton.

### ORDER ON PETITION TO REHEAR

Appellee, Anderson County Election Commission, has filed a Petition to Rehear pursuant to Rule 39 of the Tennessee Rules of Appellate Procedure. Appellee contends that this Court misapplied applicable law because the Trial Court found that the allegations in the complaint support a conclusion that there was nothing more than honest mistakes in the election process.

Appellee misapprehends our Opinion and the procedural posture of this case.

Our Opinion addressed only whether the complaint, when taken as true, stated a cause of action for purposes of Tenn. R. Civ. P. 12.02(6). We were not reviewing the grant of a Tenn. R. Civ. P. 56 motion for summary judgment or a judgment following a trial. We do not read the Trial Court's decision as holding that the alleged illegal votes were or were not illegal. Rather, the Trial Court determined that the allegations, when taken as a whole, failed to state a claim that the election was so permeated with fraud or illegality as to render it void. We affirmed that particular determination of the Trial Court. However, neither the Trial Court nor this Court have yet decided whether any votes cast were illegal. We remanded the case for the Trial Court to make the initial determination as to whether any votes actually cast were illegal for the reasons claimed by the Appellant and, if so, whether those votes cast that are determined to be illegal, if any, were equal to or exceeded the margin of victory of 119 votes. We find, contrary to Appellee's insistence, that our Opinion does not misapprehend or overlook any material facts in the record.

Appellee also requests that we consolidate this case with another election contest case pending before this Court "which has not yet been scheduled for oral argument." This request is DENIED because it comes too late given that we already have issued our Opinion in the present case.

Appellee's Petition for Rehearing and Motion for Consolidation are Denied. Costs related to this Petition and Motion are assessed to the Appellee, Anderson County Election Commission.