IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 16, 2007 Session

## JOSEPH LEE v. ANDERSON COUNTY ELECTION COMMISSION, et al.

**Direct Appeal from the Chancery Court for Anderson County**
**No. 06CH6334     Hon. Jon Kerry Blackwood, Special Judge**

**No. E2006-02572-COA-R3-CV  - FILED OCTOBER 31, 2007**

The Trial Court dismissed this election contest on Motion.  On appeal we hold the allegation that enough illegal votes were cast to change the outcome of the election when taken as true stated a cause of action.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Vacated in part, and remanded.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which SHARON G. LEE, J., joined, and CHARLES D. SUSANO, JR., J., filed a dissenting opinion.

Wendell K. Hall, Sevierville, Tennessee, for appellant.

William A. Reeves, Knoxville, Tennessee, for appellee, Anderson County Election Commission.
Harry L. Lillard, Oak Ridge, Tennessee, for appellee, Jerry Creasey.
Michael W. Ritter, Oak Ridge, Tennessee, for appellee, John Shuey.

## OPINION

In this election contest filed by the plaintiff against the Anderson County Election Commission, various commissioners, and other candidates for county commission in the August 2006 election, the Trial Judge, responding to motions to dismiss the Complaint on the grounds it failed to state a cause of action, that it was filed outside the ten day statute of limitations,[1] and that

---

[1]This defense was abandoned as it was not raised on appeal, moreover the Complaint was filed on August 11, 2006.

the grounds alleged were insufficient to void the election, dismissed the action on the motions.

Plaintiff alleged that he was a candidate for the county commission in the general elections held on August 3, 2006, and that the unofficial results were that he received 527 votes, John Shuey received 528 votes, and Jerry Creasey received 999 votes.[2] He alleged that certain votes in the election should be deemed illegal, and that there were violations of the election statute which "so permeated the conduct of the election as to render it incurably uncertain".

Plaintiff alleged that Tenn. Code Ann. §2-7-118 states that a voter cannot remain in the booth for more than 5-10 minutes, but that several voters in said election exceeded the time limits, and yet the election officials did nothing. He alleged that many voters who were waiting left without voting. He also alleged that at the Highland View precinct, paper ballots were issued to and utilized by voters, even though the voting machines were not out of order, in violation of Tenn. Code Ann. §§2-7-108, 2-7-119, and 2-9-109.

Plaintiff averred that the number of illegal votes cast was greater than the margin of victory in the election, and he sought to examine all the paper ballots immediately, a speedy trial, a ruling that all who left due to the wait would be allowed to vote, a ruling that all of the votes that took more than the time limit be considered illegal, and for the Court to declare the election void.

The Trial Court dismissed the case on motion and the plaintiff has appealed. These issues are raised on appeal:

1. Whether a Complaint to Contest Election, alleging intentional disregard by election officials of the time limits for voting prescribed by law, resulting in more votes cast in excess of the time limits than the margin of the election results, states a claim upon which relief can be granted?

2. Whether a Complaint to Contest Election, alleging intentional disregard by election officials of the time limits for voting prescribed by law, resulting in the disenfranchisement of more prospective voters than the margin of the apparent outcome in the election, states a claim upon which relief can be granted?

3. Whether a Complaint to Contest Election, alleging the issuance of illegal paper ballots at a precinct utilizing computerized voting machines, where none of the machines had become out of order, states a claim upon which relief can be granted?

The standard of review for determining whether the trial court properly granted a motion to dismiss is as follows:

---

[2]The top two vote getters were to be elected.

A Rule 12.02(6), Tenn. R. Civ. P., motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof. Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. In considering a motion to dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and deny the motion unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. In considering this appeal from the trial court's grant of the defendant's motion to dismiss, we take all allegations of fact in the plaintiff's complaint as true, and review the lower courts' legal conclusions de novo with no presumption of correctness.

*Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)(citations omitted); *Stuart v. Anderson County Election Com'n*, 2007 WL 1108901 (Tenn. Ct. App. 2007), perm. app. denied (September 17, 2007). In this case, we must construe the complaint liberally in plaintiff's favor, must take all of the plaintiff's allegations of fact as true, and must review the Trial Court's legal conclusion *de novo*.

This case is factually similar with *Stuart v. Anderson County Election Com'n*, 2007 WL 1108901 (Tenn. Ct. App. 2007), perm. app. denied (September 17, 2007), which arose from the same August 2006 election.

The plaintiff in *Stuart* raised precisely the same allegations regarding the time limits being violated, and the use of paper ballots, which he claimed resulted in substantial numbers of illegal votes, and sought a ruling that the elections was void. *Id.* The only factual difference between that case and this one is that the plaintiff in *Stuart* was running for general sessions judge, and lost by a margin of 119 votes. *Id.* Otherwise, the Complaints are almost verbatim (which is demonstrated by the significant quoted portion of the Complaint contained in the *Stuart* opinion). *Id.* Both plaintiffs alleged that substantial numbers of illegal votes were cast, and that those votes exceeded the margin of victory in the respective elections. *Id.*

For those reasons, the outcome in this case must necessarily follow the outcome in the *Stuart* case, which we decided earlier this year. We quote from it as follows:

In *Forbes v. Bell*, 816 S.W.2d 716 (Tenn.1991), our Supreme Court discussed at length the procedures for having an election set aside pursuant to Tenn. Code Ann. § 2-17-101, et seq. The *Forbes* Court began by observing that there are two grounds upon which an election contest can be based. The first ground involves a claim that the election was valid, but that the contestant, rather than the contestee, would be the winner if the outcome was properly determined. Id. at 719. If the contestant is successful in court, the proper relief in this type of case is a judgment declaring the contestant the winner. The second ground is a claim that the election was null and

void. Id. The proper remedy in this second situation, if the contestant is successful in court, is to order a new election.

Plaintiff's complaint never states or even suggests that the election was valid and that he would have been the winner had the outcome of the election been properly determined. Instead, the entire complaint focuses on Plaintiff's allegations that the election should be set aside and the Trial Court should order a new election. Thus, we are dealing only with the second ground for contesting an election discussed above.

In *Forbes*, the Court stated:

With respect to election contests seeking to have an election declared invalid, this Court has stated:

> Tennessee law empowers a court to void an election on two alternative, but closely related bases. First, "upon a sufficient quantum of proof that fraud or illegality so permeated the election as to render it incurably uncertain, even though it can not be shown to a mathematical certainty that the result might have been different." *Emery v. Robertson County Election Comm'n*, 586 S.W .2d 103, 109 (Tenn. 1979); see also *State ex rel Davis v. Kivett*, 180 Tenn 598, 177 S.W.2d 551 (1944); *Ingram v. Burnette*, 204 Tenn. 149, 316 S.W.2d 31 (1958). Secondly, where some ballots are found to be illegal, [and] the number of illegal votes cast is equal to, or exceeds the margin by which the certified candidate won. *Emery v. Robertson County Election Comm'n*, supra; *Hilliard v. Park*, 212 Tenn. 588, 370 S.W.2d 829 (1963).

*Millar v. Thomas*, 657 S.W.2d 750, 751 (Tenn. 1983).

First addressing Forbes's claim that the election should be declared void because of election irregularities that resulted in a number of allegedly illegal votes, we hold that she has failed to state a claim for the same reason that she failed to state a claim that she should be declared the winner of the election. The omission of a statement setting out the margin of Bell's victory precludes a grant of relief on this ground. Although requirements for declaring an election void based upon allegations of illegal voting are less stringent than are the requirements for declaring a contestant the victor, *Blackwood v. Hollingsworth*, supra, 260 S.W.2d at 166, those allegations must still be specific enough to establish that absent the allegedly illegal votes, the result of the election would have been different.

In cases in which the contestant seeks to have the election declared void, the prescribed methodology is for the court to consider all of the illegal votes as having been voted one way (against the contestee) and then to ascertain whether the results

-4-

of the election would thereby have been changed. *Ingram v. Burnette*, 204 Tenn. 149, 316 S.W.2d 31, 32 (1958); see also *Jared v. Fitzgerald*, 183 Tenn. 682, 195 S.W.2d 1 (1946). But even if we were to assume in this case that all of the allegedly illegal votes were cast for Bell, there is no basis in Forbes's complaint or amended complaint upon which to say that the deduction of this number of votes from Bell's total would have produced a different result or rendered the outcome in doubt. Hence, we must hold as to this basis for contest that Forbes's pleadings have failed to state a claim for which relief can be granted.

This ruling leaves Forbes with only one remaining avenue for relief, based on a claim that the election should be invalidated because it was so permeated with fraud and illegality that it cannot be said to fairly reflect the will of the voters. As to this ground, it is not necessarily fatal that the complaint does not specifically set out a sufficient number of illegal votes to change the result of the election or to make the result mathematically uncertain. *Southall v. Billings*, *supra*, 375 S.W.2d at 849. To void an election on this basis, however, the alleged wrong must be so gross and palpable a failure of the opportunity for a free and equal expression of the popular will, that the courts cannot permit the election to stand. *Barry v. Lauck*, 45 Tenn. 588 (1868). Honest mistakes or mere omissions, or irregularity in directory matters--even though gross--if not fraudulent, will not void an election unless they affect the result or at least render it uncertain. *Summitt v. Russell*, 199 Tenn. 174, 285 S.W.2d 137, 141 (Tenn. 1955).

Most election contests brought on this theory are based on claims of fraud or conspiracy, but the cases do recognize that statutory violations alone may be sufficient to render an election void. In reviewing a complaint that does no more than allege statutory violations, however, the focus of the court's inquiry must be kept in mind--that is, whether the violations are so serious as to thwart the will of the community upon a particular question. *Browning v. Gray*, 137 Tenn. 70, 191 S.W. 525, 526 (Tenn. 1916) (citing *Barry v. Lauck*, supra, 45 Tenn. at 593). Toward that end, the *Browning* court quoted *Barry v. Lauck*, as follows:

> "... Whatever statutory provisions are essential to the attainment of this end, are obviously indispensable; and whatever precautions prescribed by statute against mistake or fraud are of such a nature that their omission in the particular instance has resulted in a fraud upon the electors, or has rendered the result of the election incurably uncertain, or the future omission of which, in the future, if permitted, must necessarily prove avenues of fraud, tend to prevent a fair exercise of the franchise, or to render elections insecure and uncertain, must be held to be a matter of substance, and essential to the validity of the proceeding.

*Browning*, 137 Tenn. at 73, 191 S.W. 525.

It follows as a corollary that technical non-conformity with election statutes will not necessarily void an election, as "such strictness would lead to defeat rather than uphold, popular election, and can not be maintained." *McCraw v. Harralson*, 44 Tenn. 34 (1867). Invalidating an election solely on the basis of technical omissions, much like failing "to cross a 't' or dot an 'I'," would effectively disenfranchise voters. *Foust v. May*, 660 S.W.2d 487, 490 (Tenn. 1983).

*Forbes*, 816 S.W.2d at 719-21.

The contestant in *Forbes* alleged election voting irregularities in both Williamson and Hickman County. The allegations with regard to Hickman County were more substantial and included, inter alia: (1) the improper utilization of paper ballots in conjunction with voting machines when the voting machines were not out of order; (2) paper ballots at one precinct being cast in violation of the statute rendering all 153 ballots "illegal"; (3) allowing ballot boxes to be unlocked in violation of Tenn.Code Ann. § 2-7-109; (4) voters using paper ballots not being provided private voting compartments as required by relevant statutes; (5) voters using paper ballots turning in the ballots to election officials, as opposed to depositing them into a locked box; and (6) lines of voters were allowed to accumulate at one precinct because the election officials did not strictly enforce the "time limits for voters to use the voting machines thereby causing registered voters to leave the voting place without voting after a wait of at least one and a half to two hours." Id. at 722-23. The Supreme Court concluded that these allegations failed to state a claim upon which relief could be granted to have the election set aside on the basis that it was so permeated with fraud and illegality that it could not be said to fairly reflect the will of the voters.

The allegations of illegality in the present case are certainly no more serious than those at issue in *Forbes* which were found by the Supreme Court to be insufficient as a matter of law to set aside the election on the basis that the election was permeated with irregularities. We conclude, as did the Court in *Forbes* and the Trial Court in this case, that the allegations of misconduct on the part of election officials were insufficient to taint the election. Id. at 723. Thus, of the two bases upon which Plaintiff seeks to have this election declared invalid, the Trial Court correctly held that Plaintiff fails to state a claim upon which relief can be granted as to the first basis, that illegality so permeated this election "that it cannot be said to fairly reflect the will of the voters." Id. at 720.

This, however, does not end our inquiry. According to *Forbes*, a second basis upon which a contestant can have an election held invalid is "where some ballots are found to be illegal, [and] the number of illegal votes cast is equal to, or exceeds the margin by which the certified candidate won." *Forbes*, 816 S.W.2d at 720 (quoting *Miller v. Thomas*, 657 S.W.2d 750, 751 (Tenn. 1983)). See also *Emery v. Robertson County Election Commission*, 586 S.W.2d 103, 108-09 (Tenn. 1979)("The reported decisions

of this State uniformly authorize the courts to void an election where the evidence reveals that the number of illegal ballots cast equals or exceeds the difference between the two candidates receiving the most votes. The rule is based upon the rationale that if all of the illegal votes had been cast for the unsuccessful candidate the result would have been changed.").

Plaintiff's complaint is replete with allegations that many votes were illegal, why those votes were illegal, and that the number of those claimed illegal votes exceeds the margin by which defendant Layton won the election. In short, Plaintiff's complaint alleges that there are one hundred twenty plus illegal votes. Unlike the plaintiff in *Forbes*, Plaintiff's complaint did include a statement setting out the 119 vote margin of victory, and further included an allegation that the number of claimed illegal votes was sufficient so that the deduction of those votes from Layton's total "would have produced a different result or rendered the outcome in doubt." Id. at 720. It is not fatal to Plaintiff's complaint at this motion to dismiss stage that rather than stating a specific number of claimed illegal votes, Plaintiff instead alleges that the number of illegal votes exceeds the 119 vote margin of victory. Plaintiff's complaint, liberally construed, alleges that the number of claimed illegal votes is at least 120. Taking these factual allegations as true, which we must at this stage of the proceedings, Plaintiff's complaint does state a cause of action upon which relief can be granted on this second basis that the number of claimed illegal votes cast is 120 or more. Therefore, we vacate the Trial Court's dismissal of this action but only as to this sole basis. In so doing, we express absolutely no opinion on the merits of Plaintiff's case. On remand the Trial Court must determine whether any votes cast are illegal for the reasons claimed by Plaintiff and, if so, whether those votes cast that are determined to be illegal are equal to or exceed the margin of victory of 119 votes.

#### Conclusion

The judgment of the Trial Court is affirmed in part and vacated in part, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are taxed one-half to the Appellant, David A. Stuart, and his surety, and one-half to the Appellee, Anderson County Election Commission.

*Stuart*, at pp. 5-8.

In this case, the allegations of misconduct on the part of election officials, taken as true, are insufficient to show that the election was "permeated with fraud or illegality" such that it should be declared void, and plaintiff's Complaint fails to state a claim with regard to this ground for relief. The allegation regarding illegal votes in excess of the margin of victory, taking this allegation as true, does state a claim at this juncture of the case.

-7-

We therefore remand to the Trial Court the issue of determining whether illegal votes were cast, if any, and determine the outcome as *Stuart* dictated.

We affirm the Trial Court's Judgment in part and vacate in part, and remand for further proceedings consistent with this Opinion. The cost of the appeal is assessed one-half to the plaintiff, Joseph Lee, and one-half to the Anderson County Election Commission.

 

_____
HERSCHEL PICKENS FRANKS, P.J.