IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 25, 2011 Session

## W. ALLEN BARRETT v. GILES COUNTY ET AL.

Appeal from the Chancery Court for Giles County
No. 4800      Robert L. Jones, Judge

No. M2010-02018-COA-R3-CV - Filed October 5, 2011

The losing candidate filed an election contest alleging that the election commission made a mistake by placing the candidate who eventually won the election on the ballot. The election commission admitted it erred in determining that the candidate who later won had a sufficient number of valid signatures on her nominating petition. The trial court found that the losing candidate failed to carry his burden of proof and dismissed the case. He appealed. We affirm, finding that this was not a proper election contest and that a challenge to a person's appearance on a ballot should ordinarily be filed before the election.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

S. Jason Whatley, Sr., Columbia, Tennessee, for the appellant, W. Allen Barrett.

John Christopher Williams, Lawrenceburg, Tennessee, and Lucy D. Henson, Pulaski, Tennessee, for the appellee, Giles County.

Vicki Coleman, Pulaski, Tennessee, Pro Se.

### OPINION

#### BACKGROUND

The facts of this case are not in dispute. Vicki Coleman, Allan Barrett and two other persons were candidates for the three county commission seats in the Seventh District of Giles County. April 1, 2010, at noon was the deadline for filing nominating petitions. Coleman turned her petition in early that morning and waited for it to be examined. Of her

38 signatures, 26 were approved, thus giving her one more signature than required by law. *See* Tenn. Code Ann. § 2-5-101(b)(1). The petition was stamped filed at 8:50 a.m., three hours and ten minutes before the deadline. Coleman received a receipt stating that her petition was accepted.

Coleman received 423 votes, and Barrett received 254 votes. These totals resulted in Coleman and Barrett placing third and fourth respectively in the election for the three seats. Consequently, Coleman was elected and Barrett was not. After his defeat and four months after the filing deadline, Barrett obtained a copy of Coleman's nominating petition. As previously noted, the election office had accepted 26 of the 38 signatures on the petition, 25 being the necessary number for nomination. *See* Tenn. Code Ann. § 2-5-101(b)(1). Barrett found, however, that two of the signatories were not registered to vote in the Seventh District, which made them ineligible to sign Coleman's petition. He filed an election contest against Coleman and the Giles County Election Commission alleging that had the commission not erred, Coleman would not have been on the ballot. Barrett's first complaint, filed August 20, 2010, sought an order restraining Coleman from serving unless and until the court confirmed her election, a declaration that the election of Coleman was void, and a declaration that he won the third District 7 position on the Giles County Commission. The same day, August 20, 2010, the trial court ordered that "No elected officials for Giles County Commission, District 7, shall be sworn in unless and until the matters raised by Plaintiff in his Complaint are heard before this Court." Two amended complaints were later filed by Barrett.

Proof at trial showed that the election commission office was very busy the morning Coleman submitted her nominating petition. She was one of 10 candidates who submitted nominating petitions that morning. The Administrator of Elections for the Giles County Election Commission frankly admitted that "We made a mistake" on Coleman's nominating petition. She testified that Kenyatta Ray and Brenda Kaye Johnson should not have been approved as signers of the petition because "their address that they have written on this petition is definitely in the 7th District and they live there, but they had not changed their address with us." The trial court observed that it found no reason to charge Coleman "with trying to mislead the election commission" and described the commission's approval of the petition as "just a good-faith oversight by busy folks on probably their busiest day of the year in their office, other than maybe election day itself." After presentation of Barrett's proof,

the defendants moved to dismiss the case.[1]  The court ruled that Barrett "failed to carry his burden of proof" and granted the motion to dismiss.  Barrett appealed.

STANDARD OF REVIEW

Appellate courts use the standard found in Tenn. R. App. P. 13(d) "to review a trial court's disposition of a Tenn. R. Civ. P. 41.02(2) motion because the trial court has used the same reasoning to dispose of the motion that it would have used to make a final decision at the close of all the evidence." *Burton v. Warren Farmers Coop*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002).  We review the trial court's findings of fact de novo upon the record with a presumption of correctness, unless the preponderance of the evidence is otherwise or unless the trial court has committed an error of law affecting the outcome of the case. *Id*.

ANALYSIS

This matter was filed as an election contest. *See Hatcher v. Chairman, Shelby County Election Comm'n*, 341 S.W.3d 258, 263 (Tenn. Ct. App. 2009) (pursuant to Tenn. Code Ann. § 2-17-105, an election contest is filed "*after* the election").  This court has succinctly summarized the grounds for an election contest:

> In *Forbes v. Bell,* 816 S.W.2d 716 (Tenn.1991), our Supreme Court discussed at length the procedures for having an election set aside pursuant to Tenn. Code Ann. § 2–17–101, *et seq.* The *Forbes* Court began by observing that there are two grounds upon which an election contest can be based. The first ground involves a claim that the election was valid, but that the contestant, rather than the contestee, would be the winner if the outcome was properly determined. *Id.* at 719. If the contestant is successful in court, the proper relief in this type of case is a judgment declaring the contestant the winner. The second ground is a claim that the election was null and void. *Id.* The proper remedy in this second situation, if the contestant is successful in court, is to order a new election.

*Stuart v. Anderson County Election Comm'n*, 237 S.W.3d 297, 303 (Tenn. Ct. App. 2007).

---

[1]The motion is not in the record and was apparently made orally.  A motion for involuntary dismissal may be made by a defendant at the conclusion of the plaintiff's proof.  Tenn. R. Civ. P. 41.02(2).  Then, "the trial court must impartially weigh the evidence as though it were making findings of fact and conclusions of law after all the evidence has been presented." *Bldg Materials Corp. v. Britt*, 211 S.W.3d 706, 711 (Tenn. 2007).  If the plaintiff fails to demonstrate a right to relief by a preponderance of the evidence under the facts as found by the court and pursuant to the applicable law, then the case should be dismissed. *Id*.

Barrett has sought relief related to both types of election contest claims. First, he seeks to be declared the winner. This relates to the first ground, "a claim that the election was valid, but that the contestant, rather than the contestee, would be the winner if the outcome was properly determined." *Id*. This ground for an election contest addresses counting votes. To win under this ground, "an election contestant must 'specifically point out each and every vote that was fraudulently or illegally cast on behalf fo the contestee and against [the contestant].'" *Forbes*, 816 S.W.2d at 719 (quoting *Shoaf v. Bringle*, 241 S.W.2d 832, 833 (Tenn. 1951)). There is no allegation in this matter that anyone cast an illegal vote.

Barrett also asked that the election of Coleman be declared void. Under Tennessee law, a court has the power to void an election on either of two grounds:

> First, "upon a sufficient quantum of proof that fraud or illegality so permeated the election as to render it incurably uncertain, even though it can not be shown to a mathematical certainty that the result might have been different." *Emery v. Robertson County Election Comm'n*, 586 S.W.2d 103, 109 (Tenn.1979); *see also State ex rel Davis v. Kivett,* 180 Tenn. 598, 177 S.W.2d 551 (1944); *Ingram v. Burnette*, 204 Tenn. 149, 316 S.W.2d 31 (1958). Secondly, where some ballots are found to be illegal, [and] the number of illegal votes cast is equal to, or exceeds the margin by which the certified candidate won. *Emery v. Robertson County Election Comm'n, supra; Hilliard v. Park,* 212 Tenn. 588, 370 S.W.2d 829 (1963).

*Forbes,* 816 S.W.2d at 719-20 *(quoting Millar v. Thomas,* 657 S.W.2d 750, 751 (Tenn.1983)). Thus, the grounds for voiding an election involve (1) fraud and illegality rendering the election uncertain or (2) enough illegal ballots having been cast to call the election into doubt.

Again, there is no allegation in this matter that anyone cast an illegal vote, so the second ground for voiding the election is not met. Thus, to void Coleman's election in an election contest, Barrett must show that "the election should be invalidated because it was so permeated with fraud and illegality that it cannot be said to fairly reflect the will of the voters." *Id.* at 720. In *King v. Sevier County Election Comm'n*, 282 S.W.3d 37, 46 (Tenn. Ct. App. 2008), this court noted that examples of cases that voided elections include *Shoaf* (alleging "intimidation and dures[s]" at the polls, and a conspiracy between officials and candidate to provide insufficient ballots in opponent's stronger precincts); *State ex rel. Davis v. Kivett,* 177 S.W.2d 551 (1944) (alleging a conspiracy to "steal the election" through intimidation and the use of fraudulent votes); and *Hollis v. State ex rel. Vaughan,* 237 S.W.2d 952 (1951) (alleging a conspiracy to "steal the election" by the procurement of "fictitious absentee ballots" and the printing of fraudulent ballots that omitted some candidates' names).

-4-

The honest mistake alleged in this case does not rise to anywhere near the level of fraud and illegality necessary to void an election.

Election contests are about the manner and form of the election itself or the qualifications of the winner to hold the office to which she has been elected. *See Hatcher v. Bell,* 521 S.W.2d 799, 802 (Tenn. 1974). Neither Barrett's allegations nor his proof establish the grounds for an election contest in this case.

This case is about whether Coleman should have been on the ballot. Undoubtedly, Tennessee is allowed to require a nominating petition with a specified number of proper signatures in order to grant a prospective candidate access to the ballot. *See John Doe #1 v. Reed*, 130 S. Ct. 2811, 2828 (2010) (Sotomayor, J., concurring) ("[t]he ability of States to impose [petition requirements] can scarcely be doubted."). Tenn. Code Ann. § 2-5-101(b) states that nominating petitions "shall be signed by the candidate and twenty-five (25) or more registered voters who are eligible to vote to fill the office." There is no dispute that the election office made a mistake and approved Coleman's nominating petition with fewer than 25 valid signatures.

Is that mistake enough to void the election? We think not. The vote of the people is the most significant step in the election process. *See Snow v. City of Memphis*, 527 S.W.2d 55, 64 (Tenn. 1975) ("The final validating step by the people is the most significant action in the entire [constitutional] amending process."). Consequently, "courts should be . . . reluctant to take the step of declaring an election invalid." *Forbes*, 816 S.W.2d at 724. "[V]oiding an election is an extreme remedy." *King*, 282 S.W.3d at 43. While there is no doubt that the election commission's error made it harder for Barrett to get elected by placing a fourth candidate on the ballot for three positions, there is no evidence in this record that the election results did not reflect the will of the electorate. No one is perfect. We understand that honest mistakes sometimes occur. *See Ingram*, 316 S.W.2d at 33. "Honest mistakes . . . will not void an election unless they affect the result or at least render it uncertain." *Forbes*, 816 S.W.2d at 720.[2]

It is important to note the position in which Coleman was placed by the election commission's mistake. She relied on the commission's acceptance of the petition. If she had been told that her nominating petition had insufficient valid voter signatures, she would have had over three hours to acquire more. The mistaken acceptance of the nominating petition denied her that opportunity. As our Supreme Court once observed, "if it appeared on record, by proper pleading and proof, that the candidate was justifiably misled as to the proper

---

[2]Barrett would argue that having Coleman on the ballot affected the results, but that is not the type of effect *Forbes* meant.

calculation of time to file his petition, we would not hesitate to excuse him from literal compliance with the otherwise mandatory statute." *Crowe v. Ferguson*, 814 S.W.2d 721,725 (Tenn. 1991) (citing *Koella v. State*, 405 S.W.2d 184, 190 (Tenn. 1966)).  Similarly, while Barrett tries to place the responsibility on Coleman, the ultimate responsibility lies with the election commission to ensure the petitions meet the requirements of the law.  Coleman relied on the election commission's acceptance of her nominating petition, and that reliance should not be questioned post-election — which leads to our final point.

Challenges to a candidate's right to appear on a ballot should ordinarily be brought before the election  -- preferably in time for the issue to be resolved before the ballots have to be printed and before the start of absentee and early voting.  Barrett only chose to look for grounds to challenge Coleman[3] after he lost.  The nominating petition is a public record and was available for Barrett's inspection from April 1, 2010 forward.  Waiting to challenge her petition until after the election prejudices Coleman, her financial supporters, and those who voted for her.  There is no proof of intentional wrong-doing.  A new election would cost the people of Giles County precious taxpayer dollars.  It is just such concerns that make courts so reluctant to void elections.

The trial court is affirmed.  Costs of appeal are assessed against the appellant, Allan Barrett, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[3]Barrett did not seek to examine the nominating petitions of the other two candidates.